*John S. Scobey, Oscar B. Hord* and *Cortez Ewing,* for the appellant.

---

## RUSH's Administrator v. THE STATE.

In 1853, the Commissioners of the Sinking Fund sold certain real estate to *A,* on credit, and took his obligation therefor, with *B* as surety, payable in five years, with interest, payable annually, and gave *A* a certificate, which recited the sales and terms thereof, and that "in case of any default of payment, according to the terms of purchase, then the premises shall be immediately forfeit and revert to the State, with all payments and improvements thereon, and the State shall be entitled to re-sell at any time." *A* took possession, and, before maturity of his obligation to the State, sold the land in separate parcels to different persons, and received in full the consideration therefor, and gave them respectively his bond for title at a future time. *A,* and *B,* his surety, failed to pay the State

for the land, and the State, having tendered a deed to *A*, sued *A* and *B*, on their obligation for the purchase-money, making *A's* grantees parties.

*Held*, 1. That they were proper, if not necessary, parties, for the purpose of adjusting the equities between them and the surety of *A*.

2. That, in the absence of other intervening equities, *B*, as *A's* surety, upon payment of the money, would be entitled to be subrogated to the rights of the State in respect to the land.

3. But, under the circumstances of this case, the equities in favor of *A's* grantees, who have once paid .for said land, are superior to those of *B*, as such surety.

4. That it was optional with the State, either to enforce the contract with *A*, by complying with its terms on her part, and collecting the purchase-money, or to avoid the contract in consequence of the breach thereof by *A*; and to re-sell the land.

APPEAL from the *Rush* Circuit Court.

WORDEN, J.—In *December*, 1853, at a public sale of lands, which had been mortgaged to the State, to secure loans made by the Sinking Fund, *Harvey D. Rush* purchased, on credit, 320 acres, for the sum of 734 dollars and 27 cents, and, to secure the purchase-money, executed, with *Greenberry B. Rush* as his surety, the following bond, viz:

"Know all men by these presents, that we, *Harvey D. Rush*, and *G. B. Rush*, are held and firmly bound unto the State of *Indiana*, in the penal sum of 1468 dollars and 54 cents, for the payment whereof we bind ourselves, our heirs, executors and administrators, sealed with our seals, and dated this 10th day of *December*, 1853.

"Whereas, the said *Harvey D. Rush* has purchased from the said State, through her Commissioners of the Sinking Fund, at the sum of 734 dollars and 27 cents, the following pieces, parcels, or lots of land, lying and situated in the county of *Owen*, and State of *Indiana*, to-wit: (here follows.

a description of the land), on a credit of five years from the date hereof, with interest annually, in advance, at the rate of 7 per cent. per annum, and has paid 51 dollars and 39 cents, being one year's interest in advance, and received a certificate of such purchase.

"Now, therefore, the condition of the above obligation is such that, if the said *Harvey D. Rush* shall well and truly pay to said State, at the office of the Sinking Fund, in *Indianapolis*, the like sum of 51 dollars and 39 cents, annually, in advance, on the 10th day of *December*, in each year, and said principal sum, on or before the expiration of five years from the date, and will not commit or suffer any waste of said premises, then this obligation to be void, else to remain in full force.

"HARVEY D. RUSH, [SEAL.]
"G. B. RUSH,          [SEAL.]"

The certificate of purchase mentioned in the above bond, executed by the Sinking Fund Commissioners to said *Harvey*, after reciting the facts of the sale, and the payment of the first year's interest, stipulates, that if said *Harvey D. Rush* should make the payment of interest and the principal when it should become due, he should receive a deed for the premises; "but in case of any default of payment, according to the terms of purchase, the premises shall be immediately forfeit and revert to the State, with all payments and improvements thereon, and the State shall be entitled to re-sell at any time."

*Harvey D. Rush*, in pursuance of his purchase, took possession of the land, and, before the final payment from him to the State become due, sold a part thereof to one *Middleton*, and the residue to *O. J.* and *H. Winters*, receiving the consideration therefor, and executing to *Middleton* and the *Winters*,

title bonds, conditional for conveyances to be made on or before the 25th of *December,* 1858.

The purchase-money due from *Rush* to the State, not having been paid, this suit was brought for its recovery. *Harvey D. Rush* was insolvent, and a non-resident of the State. He was brought into Court by publication only. The two *Winters* and *Middleton* were also made defendants. There was final judgment against *Greenberry B. Rush* for the amount due the State. His administrator appeals.

Several questions are made on the pleadings. These pleadings need not be further noticed in particular, as the questions involved may be passed upon without further reference to them. It is objected that the *Winters* and *Middleton* were improper parties defendant, and that their joinder was calculated to prejudice the defence of *Greenberry B. Rush.* We think they were proper, if not necessary parties. The State, as was necessary for her to do, brought into Court a deed to *Harvey D. Rush* for the premises. In the absence of any intervening equities, *Greenberry*, being the surety of *Harvey D.*, might, perhaps, upon the payment of the money, be entitled to be subrogated to the rights of the State in respect to the land, or other such relief as might be just to all parties, and no detriment to the State. For the purpose of settling in one suit the equities between *Greenberry* and the purchasers from *Harvey D. Rush*, the latter were proper parties. And, it seems to us, that the equities of the purchasers from *Harvey D. Rush* are superior to those of *Greenberry*, as such surety. Their equity was perfect when they bought the land and paid for it. It was older than that of *Greenberry*, who acquired no equity until he had paid, or been adjudged to pay, what was due on the land to the State. If, upon judgment being rendered against *Greenberry*, he would have been entitled, as surety, to have the land first sold and applied to the payment of the judgment, or to have had the land other-

wise applied to his benefit, in the absence of any equitable rights of third persons, the rights of such third persons acquired before any such rights accrued to him, must prevail over his, according to the maxim that he has the better title who was first in point of time.

This brings us to the main question in the case. It is insisted, that inasmuch as the certificate of purchase provides that, in default of payment, according to the terms of the purchase, "then the premises shall be immediately forfeit and revert to the State, with all payments and improvements thereon, and the State shall be entitled to re-sell at any time," the whole contract is avoided, and liability on the bond ceases, except for any deficit after selling the land. In other words, it is insisted, that the State can not enforce the contract by tendering a conveyance and suing for the purchase-money, but must first re-sell the land, and hold the original purchaser and surety liable only for any deficit. We can not give the contract that construction. In our opinion, it was optional with the State, either to enforce the contract by complying with it on her part, and collecting the purchase-money, or to avoid the contract in consequence of the breach thereof by the purchasers, and to re-sell the land. This view is fully sustained by the authorities. *Canfield* v. *Westcott*, 5 Cow. 270; *Clark* v. *Jones*, 1 Denio 516; *vide*, also, *Ludlow* v. *The N. Y. & Harlem R. R. Co.*, 12 Barb. 440.

One further question only is made in the cause. An issue was formed as to the State's title to the property. To show such title, the plaintiff offered in evidence a certain certificate of the State Auditor, which was admitted over the objection of the defendant. We are not aware of any statute which makes a certificate of the character of the one in question (it not being of the records, &c., of the office, as provided for by the 283d section of the Code,) competent evidence. But the judgment should not be reversed on this ground, for the reason

that, independently of the certificate, there was sufficient evidence before the Court, which tried the cause, to raise a fair presumption that the State had title, and there was no evidence to rebut such presumption. Independently of the certificate, the finding was in accordance with the evidence.

*Per Curiam.*—The judgment below is affirmed, with costs, and 1 per cent. damages.

*Thomas A. Hendricks* and *Geo. C. Clark,* for the appellant.

*Torbet & Reid,* for the appellee.