## HAZLETON v. LE DUC.

CONTRACTS FOR SALE OF LAND; STATUTE OF FRAUDS; ATTORNEY AND CLIENT; RATIFICATION OF ATTORNEY'S ACT; EVIDENCE; PLEADING AND PRACTICE; TENDER; WAIVER; MEASURE OF DAMAGES.

1. *Quære,* whether an agreement is valid within the Statute of Frauds, if signed by the party to be charged, although unsigned and not binding upon the other party.
2. When the holder of second deed of trust notes sends the notes to an attorney for collection, and property upon which they are secured is bid in by the attorney for his client at a sale under a first deed of trust, and a contract for the sale of the land is thereupon made by the attorney in his client's name, the execution by the client of a deed of the property prepared by the attorney for his execution and the execution of the trustees under the first deed of trust and delivery to the intending vendee is a sufficient ratification of the act of the attorney in signing the contract of sale to bind the client, even though the original authorization were not.
3. In an action by the vendor in such a contract of sale against the

vendee for breach of the contract, the admission of the contract in evidence before evidence had been admitted to prove the authority of the attorney or the ratification by the plaintiff of his act, is not reversible error. The order of proof is within the discretion of the trial court.

4. The price for which the property sold at a public sale six months after the breach of the contract of sale, is admissible in evidence in such a case, as tending to show the value of the property at the time of the forfeiture of the contract.

5. In such a case, it is competent as affecting the question of the value of the property, to show whether the attorney who had bid the property in for his client, the holder of the second deed of trust notes, at the first deed of trust sale, had bid the sum at which the property was sold because he thought the property worth it, or because representing the second lien, he could bid that sum without rendering his client liable to pay a greater amount of money than if he had bid a smaller sum, and a question to that effect propounded to the attorney is admissible.

6. An assignment of error based upon the overruling by a trial court of an objection to a question propounded a witness upon the grounds that it "was immaterial, incompetent and inadmissible," and when no more specific ground of objection is found in the record or brief of appellant, and when the record fails to disclose that the question was answered, may properly be disregarded.

7. An exception taken to the refusal of a trial court to direct a verdict for the defendant at the close of the plaintiff's testimony is waived by the defendant's giving evidence in defence.

8. A contract for the purchase of land which recites that the vendor by his attorney has received "the sum of $200 on account of the purchase money" of the real estate in question "this day sold to him (the vendee) by me," and which then sets forth the terms of sale, which are "to be complied with in 15 days or deposit will be forfeited," is one of bargain and sale for the breach of which the vendee is liable in damages, and not merely an option to purchase; *distinguishing* Jones *v.* Holladay, 2 App. D. C. 279.

9. The construction of such a contract is for the court and not the jury, and it is not error for the trial court in a suit on such a contract to refuse to instruct the jury that if the defendant understood the agreement to be an option to purchase, the plaintiff could not recover.

10. To entitle the vendor to maintain such a suit it is not necessary that the legal title of the property should be vested in him, if he could have controlled it and had it conveyed to the vendee upon payment of the purchase money.

        Statement of the Case.

11. And the actual tender by the vendor to the vendee of a deed of the property is unnecessary if he is able, ready and willing to tender a deed and offers to do so within the time limited in the contract.
12. The refusal by the vendee in such a case to complete the pur-chase on grounds afterwards held untenable in law, is a waiver by him of actual tender of a deed by the vendor.
13. The measure of damages in such a case is the difference between the price agreed to be paid for the land and its real value at the time the contract is broken.

No. 590. Submitted December 3, 1896. Decided March 2, 1897.

HEARING on an appeal by the defendant from a judg-ment on a verdict in an action to recover damages for breach of a contract to purchase land. *Affirmed.*

The COURT in its opinion stated the case as follows:

This is an action of assumpsit brought in the court below by the appellee, William G. Le Duc, against the appellant, George C. Hazelton, to recover damages for the breach of an alleged contract by which it is claimed that appellant agreed to purchase from appellee a certain house and lot in the city of Washington, District of Columbia, known as lot numbered 46, in square numbered 199. The trial resulted in a verdict and judgment against appellant for the sum of $2,900; and he appealed to this court, alleging certain errors in the rulings of the trial justice in admitting evidence, and in instructions given the jury, and in refusing to instruct as prayed by appellant's counsel.

The contract declared upon and admitted in evidence at the trial is in the words and figures following, to wit:

"Received at Washington, D. C., July 18, 1893, of Mr. George C. Hazelton, the sum of two hundred dollars on account of the purchase money of lot numbered forty-six (46), in square numbered one hundred and ninety-nine (199), in said city, this day sold to him by me, at and for the sum of fourteen thousand one hundred dollars ($14,100), on the following terms, to wit: $3,600 in cash, $8,000 in three years, with 6 per cent. semi-annual interest, and $2,500 in six and

twelve months, with six per cent. semi-annual interest: said deferred payments to be secured by deed of trust on premises sold; terms of sale to be complied with in fifteen days or deposit hereby made will be forfeited.

"Title to be good and all taxes to be paid to June 30, 1893.

"All recording at purchaser's cost.

"WILLIAM G. LE DUC,

"By SAM'L MADDOX,

" *His Att'y.*

"I agree to the make above-mentioned purchase on terms as stated.

"GEO. C. HAZELTON."

The evidence in the record shows that at the time of the making of this contract the legal title to the real estate therein mentioned was in Martin F. Morris and James G. Berret, trustees in a deed of trust given by the owner to secure the payment of a debt, and that the owner had also given a second deed of trust upon the same real estate to secure other notes which were held by the appellee, and that the said trustees had, prior to the date of the said contract, sold said real estate at public auction in pursuance of the authority vested in them by the said deed of trust to them, and that appellee, acting by and through his attorney, Maddox, had become the purchaser at said sale, at the price of $14,500, which was nearly, though not quite, sufficient to cover the debts secured by the first and second trusts, taxes and expenses of sale, about $3,900 of which represented the debt due appellee, but the said sale had not been consummated by the payment of the purchase money by appellee and a conveyance to him by said trustees. There is evidence tending to show that this state of the title was known to the appellant at the time of the making of said contract. The said contract between appellant and appellee never was consummated by payment of the money and giving of notes by appellant and the conveyance of title to him as contemplated therein; but after several demands by

appellee upon appellant to consummate the contract, and his failure to do so, and the appellee also failing to consummate his contract of purchase with the said trustees, the latter advertised the real estate for resale, of which the appellant had notice, and at said resale, which took place in January, 1894, the property was purchased by a stranger for the sum of $11,000. The declaration claims to recover the difference between the last named sum and the price mentioned in the contract sued upon less the $200 deposit paid by appellee at the time of making the contract, as damages resulting from the alleged breach of the said contract by appellee in failing to complete the sale in accordance with the terms thereof; and the verdict and judgment are for that amount.

*Mr. James Coleman* for the appellant:

1. The defendant, on the trial, objected to the introduction in evidence of the alleged contract of sale, for the reason that it was not signed by the owner of the lot, nor, as appeared on the face of the paper, by any person authorized by him to sign it. It was signed William G. Le Duc, by Samuel Maddox, attorney. No authority appears on the face of the paper for Mr. Maddox to sign as attorney in fact. The relation of attorney at law could not exist between these parties, unless some suit had been pending between them, in which the court had acquired jurisdiction by due service of process. This error was sought to be cured by proving that Mr. Maddox had received three notes for collection from the plaintiff, secured by a second deed of trust on the property. This gave him no right to sign the paper in question. He could not compromise the suit, for no suit had been begun, and he had no authority, or none was shown, to bind the plaintiff to convey by deed the property in question. An attorney at law, as such, is authorized to do those things only which pertain to the conducting of the suit; he has a right to enter into a reference, but no right to make a com-

promise. *Davidson* v. *Rozier*, 23 Mo. Rep. 388; *Holker* v. *Parker*, 7 Cranch, 436.

2. The plaintiff must aver and prove that he had such a title to the property as would enable the defendant to hold the property, after he purchased it, as against any person who might challenge his right to it. This the record shows that he never had. The plaintiff was not at any time in a position where he could have conveyed the property to the defendant. This is an action at law, and the time fixed for performance is at law deemed of the essence of the contract. And if the seller is not ready and able to perform his part of the agreement on that day the purchaser may elect to consider the contract at an end.

To entitle the plaintiff below to recover, he must show that he had a perfect title, free from all encumbrances, and was able as well as willing and ready to convey a good title to the defendant on the day named in the agreement. *Washington* v. *Ogden*, 1 Black, 450; *Bank* v. *Hagner*, 1 Peters, 455; *Falkner* v. *Guild*, 10 Wis. 563; *Tingley* v. *Cutter*, 7 Conn. 291; *Gaar* v. *Lockbridge*, 9 Ind. 92.

3. The plaintiff should have proved, to entitle him to recover, that he had, at the time fixed for the performance of the contract, in his possession a good and sufficient warranty deed to the premises in question, and that he tendered the same, duly executed, to the defendant. *Bank* v. *Hagner*, 1 Pet. 455; *Dunham* v. *Pattee*, 4 Selden, N. Y., 508; *Lester* v. *Jewett*, 1 Kernan, N. Y., 355; *Williams* v. *Healey*, 3 Denio, N. Y., 363; *Courtwright* v. *Deeds*, 37 Iowa, 503; *Morris* v. *Sliter*, 1 Denio, 59.

4. The true measure of damage in this action, we submit, is the difference between the contract price and the value of the land at the time the contract is broken.

In contracts for the sale of real estate, when the vendee refuses to receive the deed and pay for the land, the measure of damages which the vendor may recover in a suit at law

is the difference between the price agreed to be paid for the land and its real value at the time the contract is broken. *Griswold* v. *Sabin*, 51 N. H. 167; *Railroad* v. *Evans*, 6 Gray, 25; *Porter* v. *Travis*, 40 Ind. 556; *Marshall* v. *Harvey*, 4 Maryland, 498; *Meason* v. *Kaine*, 67 Pa. State, 134; *White-side* v. *Jennings*, 19 Ala. 784; *Drew* v. *Pedlar*, 87 Cal. 443; *Hopkins* v. *Lee*, 6 Wheat. 109; *Douglass* v. *Mandeville*, 3 Cranch, 300.

But the plaintiff was not entitled to recover at all. The agreement was not a contract for the sale of the land. It was simply that if the defendant did not take the property he would forfeit $200, which he did. This was the damage agreed upon and not a penalty.

When a party to an agreement contracts upon a given event to "forfeit and pay" a certain sum of money, the natural and legal import of the terms renders that sum stipulated damages or compensation, and not a penalty, unless a contrary intention is to be inferred from other parts of the agreement. *Cheddick* v. *Marsh*, 21 N. J. L. 463; *Bank* v. *Hagner*, 1 Pet. 455; *Matthews* v. *Sharp*, 99 Pa. State, 560; *Streeper* v. *Williams*, 48 Pa. State, 450; *Tingley* v. *Cut-ler*, 7 Conn. 291; *Lowe* v. *Peeres*, 4 Burr. 2223; 3 Parsons on Contracts, 157; *Jones* v. *Holladay*, 2 App. D. C. 279.

*Mr. B. F. Leighton* for the appellee :

1. The party to be charged only need sign the contract in order to satisfy the provisions of the Statute of Frauds. It is not necessary that both parties sign the agreement; mutuality of remedy may be wanting. The right of the party who has not signed, to sue the party who has, is well established. *Clason* v. *Bailey*, 14 John. 486; *Justice* v. *Lang*, 1 Am. Rep. 576; *Douglass* v. *Spears*, 10 Am. Dec. 588; *Merritt* v. *Clason*, 7 Am. Dec. 286, and note thereto; *Johnson* v. *Dodge*, 17 Ill. 440; *Farwell* v. *Lowther*, 18 Ill. 255; *Wor-rall* v. *Munn*, 55 Am. Dec. 330, and note; *Edwards* v. *Insur-ance Co.*, 21 Wend. 492; *Champlin* v. *Parrish*, 11 Paige, 410;

*Woodward* v. *Aspinwall,* 3 Sand. 276; *Earl* v. *Campbell,* 14 How. Pr. 332; *White* v. *Schuyler,* 31 How. Pr. 41; *Railroad Co.* v. *Evans,* 6 Gray, 33; *Ives* v. *Hazard,* 4 R. I. 81; *Gattrell* v. *Stafford,* 12 Neb. 545. It is, therefore, immaterial whether the appellee signed the contract or not, the appellant did sign it, and he is the party sought to be charged.

2. Where defendant buys land at auction and has refused to complete the purchase, and the land is resold, the price obtained at the second sale may be shown as proof of the plaintiff's loss. 3 Sedgwick on Damages, Sec. 1023, and cases cited. That a vendor of land on failure of purchaser to pay, may resell and recover for breach of the first contract, is well settled, and although the difference in price is not conclusive, yet according to the authorities it affords a good criterion of the damages actually sustained. *Gardner* v. *Armstrong,* 31 Mo. 538.

3. The rule of damages laid down in 6 Gray, *supra,* obtains in England. *Laird* v. *Pym,* 7 M. & W. 478. The same rule is adopted in several of the States. *Wasson* v. *Palmer,* 17 Neb. 331; *Porter* v. *Jarvis,* 40 Ind. 556; *Adams* v. *McMillan,* 7 Porter, 80; *Griswold* v. *Sabin,* 51 N. H. 170.

4. Ordinarily it is the duty of the vendor to prepare and tender the deed transferring title to the purchaser. *Taylor* v. *Longworth,* 14 Pet. 175; *Buckmaster* v. *Grundy,* 2 Ill. 310; *Tinney* v. *Ashley,* 15 Pick. 546; *Fuller* v. *Hubbard,* 6 Cowen, 13. But the vendee may, by his conduct or language, excuse performance of this condition by the vendor. *Wasson* v. *Palmer,* 17 Neb. 331. If the vendee gives notice of his refusal to carry out the contract, the vendor is excused from tendering the deed. *Crary* v. *Smith,* 2 N. Y. 60. So where the contract is for the purchase of property, conveyance to be made and consideration to be paid at a future day, if prior to the day stipulated, the vendee gives notice to the vendor that he has made up his mind to abandon the contract. *North, Admr.,* v. *Pepper,* 21 Wend. 636.

The contract provides for the forfeiture of the deposit, if

the sale is not complied with, but this proviso is clearly for the benefit of the vendor, of which he may avail himself or not, at his election.   *Canfield* v. *Westcott*, 5 Cow. 271; *Rush* v. *State*, 20 Ind. 436; *Belloe* v. *Davis*, 38 Col. 247.

Mr. Justice COLE, of the Supreme Court of the District of Columbia, who sat with the court on the hearing of this cause in the place of Mr. Justice MORRIS, delivered the opinion of the Court:

The first assignment of error is based upon the appellant's exception to the judgment of the court below in admitting in evidence the contract sued upon.

The specific objection urged by appellant's counsel to the admissibility in evidence of this writing is that Maddox, the attorney who signed, had no authority to bind the appellee by signing his name to the contract, and that appellee was not thereby bound, and that therefore the appellant never become bound for want of mutuality in the contract.

The reply of appellee's counsel to this position is two-fold; first, that an agreement is valid within the Statute of Frauds if signed by the party to be charged, although unsigned and not binding upon the other party; and second, that the evidence shows that Maddox was duly authorized to sign the contract for the appellee, and that he was bound thereby.   There is a conflict of decisions upon the legal point just stated, and it is unnecessary to express any opinion upon that question in this case, as the evidence sustains the contention of the appellee as to the authority of Maddox.   He testified, in substance, and there is no contradiction of his testimony upon this point, that the appellee sent him the notes he held secured by second deed of trust for collection, and authorized and directed him to do whatever he thought best in order " to collect the notes and save him whole."   If that authorization was not sufficient to enable Maddox to bind appellee by signing his name to the contract, his act in that regard was fully ratified after-

wards. The evidence shows, without controversy, that on the day the contract was signed Maddox prepared a deed for the said trustees and appellee to sign, conveying the property to appellant, and sent it to appellee, who executed and returned it to Maddox within a few days, and prior to the expiration of the time within which the contract was to have been consummated. That deed was given in evidence at the trial. This was a complete ratification of the original signing by Maddox, and rendered the contract as binding upon appellee as if he had given full and formal authority to Maddox prior to the execution of the contract. But it was urged at the argument that at the time this contract was offered and admitted in evidence, no evidence had been given tending to prove the authority of Maddox, or the ratification by appellee of his act; and therefore that it was error to admit it until after the proper foundation had been laid. But this objection goes only to the order of proof, which was in the discretion of the trial court, and no prejudice could have resulted to appellee from the course adopted. The assignment of error, therefore, in admitting the contract in evidence, is not well taken.

The second and fourth assignments of error are based upon the ruling of the court below in admitting evidence tending to prove the course of bidding and the price for which the property was sold at the auction sale in January, 1894. The testimony admitted tended to show that the bidding and competition was spirited up to $10,000, and that thereafter it was sluggish, and the property was finally knocked down at the price of $11,000. There was no error in admitting this evidence. It is correct, as contended by appellant's counsel, that the ultimate fact to be proved upon this branch of the case, was not the value of the property at the time of this auction sale, but on the day of the forfeiture of the contract. But it was proper that the jury, in determining the value at the last mentioned date, should consider, under proper instructions, the sum for which it

sold at public auction about six months later, and the circumstances attending such sale. The price realized for the property at a fair public sale thereof has always been held by the courts to be *prima facie* evidence of the value thereof, at the date of such sale, and the time at which the jury was to ascertain the value was not so remote from the date of this sale as to render the evidence either misleading or valueless as bearing upon the question of value at the time in question. 3 Sedgwick on Damages, Sec. 1023; *Gardner* v. *Armstrong*, 31 Mo. 538; *Old Colony R. Co.* v. *Evans*, 6 Gray, 30; *Griswold* v. *Sabin*, 51 N. H. 170.

The third assignment of error is to the action of the court in overruling the objection of appellant's counsel to the following question put by appellee's counsel to Maddox, who was a witness for appellee: "Q. Did the fact that you represented the second trust notes upon this property have anything to do with the amount that you bid for the property?" The record shows that the grounds of objection to this question were that it "was immaterial, incompetent, and inadmissible," and that the court overruled the objection. No more specific ground of objection is found in the record, or in the brief of counsel. Nor does it appear that the witness answered. Under such circumstances, this assignment of error might well be disregarded, even if the question appeared to call for illegal testimony. But the question was clearly relevant, and the objection to it properly overruled. The question of the value of the property on the 2d day of August, 1893, was before the jury. The sale at which Maddox purchased the property for appellee on a bid of $14,500 took place in May previous. It was competent, as affecting the question of value, to show whether the witness bid that sum because he thought the property worth it, or because, representing the second lien, he could bid that sum without rendering his client liable to pay a greater amount of money than if he had bid a smaller sum,

and that was the evident purpose of the question. There is no merit in the third assignment of error.

The fifth assignment alleges error in the refusal of the court to instruct the jury to return a verdict for appellant at the close of the appellee's case. But as appellant afterwards gave evidence tending to rebut that given in behalf of appellee, that was a waiver of the exception taken to that action of the trial court, and the appellant's counsel very properly abandoned it in this court.

The remaining assignments of error, the sixth, seventh, eighth and ninth, relate to the instructions asked by the appellant's counsel to be given to the jury and refused by the court, and to the instructions actually given voluntarily by the court and at the request of appellee's counsel.

The court, against the objection of the appellant's counsel, instructed the jury that the contract in evidence was one of contract and sale, and obligated the defendant to complete the purchase within fifteen days from the date thereof; and this action of the court is alleged to be error, the appellant contending that the contract gave an option to the appellant to purchase the property within fifteen days, on the terms mentioned in the contract, or to forfeit the deposit of $200 made by him.

In the construction of a contract the intention of the parties is to prevail, and in ascertaining this intention all the provisions of the contract are to be considered, and the language is to be given its plain and ordinary meaning. This rule is too elementary to justify citation of authority in its support. The contract in this case recites that appellee's attorney, who signed it, had received of the defendant " the sum of two hundred dollars, on account of the purchase money," of the real estate in question, " *this day sold to him* (appellant) *by me* (appellee)." The terms of the sale are set forth, and there is added "terms of sale to be complied with in fifteen days or deposit will be forfeited." Immediately following the signature of appellee by his attorney,

and on the same paper, is the following undertaking signed by appellant: "I agree to make the above mentioned purchase on terms as stated." The only construction that can reasonably be put upon this language is that the parties intended and understood that there was a then present sale of the property; that appellee agreed to sell and appellant agreed to purchase on the terms mentioned in the contract. The two hundred dollars were not paid to buy an option to purchase within fifteen days, but as a *part of the purchase money* for the property then purchased by appellant. To construe this instrument to be an option to purchase would require the rejection of the language used in it, and the substitution therefor of words of different meaning. Had the memorandum signed by the appellant read, "I agree to elect to make the above mentioned purchase on terms as stated within fifteen days, or forfeit the deposit made," it would have been an option to purchase. The memorandum which he did sign is of very different signification from the one supposed. To give it the same meaning by construction would be to make a contract for the parties, not to construe the one they made. Some stress was laid at the argument upon the language in the contract, " terms of sale to be complied with in fifteen days or deposit hereby made will be forfeited." But clearly these words do not change the contract into an option to purchase on behalf of appellant. These words were inserted for the benefit of the vendor, and gave him the option, if the terms of the sale should not be complied with in fifteen days; of treating the contract as void and retaining the two hundred dollars, or treat it as valid and sue for the balance of the purchase money, or for such damages as he might suffer from a breach of the contract by the vendee. This is the invariable construction which had been placed upon similar provisions in such contracts. *Canfield* v. *Westcott,* 5 Cowen, 271, and other cases there cited; *Rush's Admr.* v. *The State,* 20 Ind. 436. In the case of *Canfield* v. *Westcott,* the court said that a similar

provision in the agreement was for the benefit of the vendor, and that on the vendee's default, the vendor might consider the agreement void at his own election or affirm it and bring his action on the covenants. In the case in the 20th Indiana, the construction of a similar provision in a contract was the main question in the case. The court in that case said:

"It is insisted that, inasmuch as the certificate of purchase provides that, in default of payment, according to the terms of the purchase, 'then the premises shall be immediately forfeit and revert to the State, with all payments and improvements thereon, and the State shall be entitled to resell at any time,' the whole contract is avoided, and liability on the bond ceases, except for any deficit after selling the land. In other words, it is insisted that the State cannot enforce the contract by tendering a conveyance and suing for the purchase money, but must first resell the land and hold the original purchaser and surety liable only for any deficit. We cannot give the contract that construction. In our opinion, it was optional with the State, either to enforce the contract by complying with it on her part, and collecting the purchase money, or to avoid the contract in consequence of the breach thereof, by the purchasers, and to resell the land. This view is fully sustained by the authorities." A number of cases are referred to by the court, all of which support the principle stated.

In the case of *Jones* v. *Holladay*, 2 App. D. C. 279, referred to in argument by appellant's counsel, in which it was said by this court that the contract therein mentioned was an option to purchase, the provision of the contract was positive and unqualified that upon failure of the vendee to comply with the terms of sale, the contract was to be null and void. And there are other expressions in said contract clearly showing it to have been the intention of the parties that if the vendee failed to comply within the time limited the contract should cease to be binding upon either

party thereto, and that the vendor should retain the deposit paid at the time of the signing of the agreement. The agreement sued on in the case now before the court is a very different one, and we have no hesitation in holding it to be a contract of purchase, and that the court below did not err in so instructing the jury.

The appellant's counsel excepted to the refusal of the court to submit the question of the construction of the contract to the jury, and to instruct them that if appellant understood the agreement to be an option to purchase the plaintiff could not recover. What has already been said disposes of this question. The construction of the contract was for the court, not the jury, and there was no error in refusing to submit that question to their judgment.

The appellant's counsel also requested the court to instruct the jury that in order for the appellee to recover the evidence should show that the legal title to the real estate in question was in him ; but the court refused to so instruct, and thereupon the appellant's counsel prayed an instruction in the following language:

"(2) Before the plaintiff can recover in this action he must prove a tender to the defendant, before the commencement of this action and at or before the time fixed for the performance of the contract, of a good and sufficient warranty deed in the law, executed by the persons having the legal title to the premises in question; and it is not sufficient for the plaintiff to prove such tender by showing that he had a deed in his possession ready to deliver, but he must produce the deed to the defendant so that the defendant may see and from his knowledge and inspection know that the deed is what the plaintiff, his agent or attorney, represented it to be."

The court refused to give that instruction also, but instructed the jury upon that branch of the case that the deed offered in evidence executed by Morris and Le Duc was sufficient to convey the legal title to appellant if it had been

signed by Berret, the other trustee ; and that if they should
find from the evidence that the appellee was ready and able
to deliver that deed executed also by Berret, within the fif-
teen days mentioned in the contract, he was entitled to re-
cover.　Appellant excepted to the refusal to instruct as
prayed and to the instruction as given.

The evidence in the record bearing upon the point under
consideration . is substantially as follows: Maddox testified
that he called upon the appellant not later than the 23d or
24th day of July, 1893, within the fifteen days, with the
deed executed by Le Duc and Morris given in evidence,
and informed him that he had the deed so executed, and
that Berret would sign it at any time when he was prepared
to pay the purchase money; and that appellant was not
ready with his purchase money, but gave as an excuse for
delay that he had been disappointed in receiving money
that he had expected ; that he also called upon and wrote
to appellant on several occasions after the expiration of the
fifteen days, demanding compliance with the contract, and
received the same reply.　Appellant testified that he had
several conversations with Maddox about complying with
the contract, one or more of which was within the fifteen
days, but he denies that Maddox told him at any time he
had a deed ready for him or that he was ready to deliver
him a deed.　In answer to a question on cross-examination
put by Maddox appellant stated as follows:

" Why, I think I told you right after, along some time in
the 15 days, about the condition of the country and the
hardship of getting money, and all that sort of thing; but I
will say that I did not refuse to take this property on the
ground that I could not get the money, nor did I act for
any such reason.　I refused to take this property because I
found upon the examination of it that it was way beyond
what its real value was, and that the amount to be required
to improve that property carried it beyond where I ought

to go or anybody else ought to go on the basis that you were to sell it to me—$14,000."

Appellant also testified that he considered the contract gave him an option to purchase the property within the fifteen days at the price mentioned, and that he had the right to elect to do this or forfeit the $200 deposit paid by him, and that he elected to do the latter for the reasons set forth in the foregoing quotation from his testimony. He also testified that he thought that the first conversation between him and Maddox in which he assigned this reason for declining to take the property was as early as the first or second day of August, 1893, either of which was within the fifteen days.

Upon this testimony it is apparent that it was competent for the jury to find that within the fifteen days the appellee was able and ready to deliver a proper deed from the said trustees and Le Duc, and notified appellant of his willingness to do so upon receipt of the cash payment and execution of notes and deed of trust for the deferred payments, and that appellant declined compliance with the contract on the ground alleged by him that he was not bound by the contract, or that he had not the money as stated by Maddox. Under such state of the evidence, was it necessary, in order for the plaintiff to maintain this action, either that he should have had the legal title in himself, or that he should have actually tendered appellant a properly executed deed sufficient to vest the legal title in him? are the two questions raised by the exceptions under consideration.

It was not necessary for appellee to have had the legal title. If he could have controlled it and had it conveyed to appellant upon payment of the purchase money, that is all the latter had any right to demand. *Flanagan* v. *Fox,* 25 N. Y. Supp. 514; *Dressel* v. *Johnson,* 104 Mass. 415, 416, and authorities there cited.

Nor was it necessary that the appellee should actually have tendered a deed for the real estate to the appellant within the fifteen days. It was sufficient that he was able

and ready to do so within that time. *Phillips, &c., Const. Co.* v. *Seymour et al.*, 91 U. S. 646, 650; *Loud* v. *Pomona Land and Water Company*, 153 U. S. 564; *Papin* v. *Goodrich*, 103 Ill. 86.

Admitting that the covenants in the contract under consideration are dependent, about which there may properly be some controversy, still, under the authorities, if the appellee was ready and willing to convey, and offered to do so within the time limited, that was sufficient to enable him to maintain this action, without making an actual tender of a deed. In the case of *Phillips, &c., Co.* v. *Seymour et al.*, above cited, the Supreme Court said:

" Where a specified thing is to be done by one party as the consideration of a thing to be done by the other, it is undeniably the general rule that the covenants are mutual, and are dependent, if they are to be performed at the same time; and if, by the terms or nature of the contract, one is first to be performed as the condition of the obligation of the other, that which is first to be performed must be done, or tendered, before that party can sustain a suit against the other. There is no doubt that in this class of contracts, if a day is fixed for performance, the party whose duty it is to perform or tender performance first must do it on that day, or show his readiness or willingness to do it, or he cannot recover in an action at law for non-performance by the other party."

This decision is to the point that an actual tender is not always necessary, but that readiness and willingness suffice, under some circumstances.

And in the case of the *Bank of Columbia* v. *Hagner*, 1 Peters, 455, relied upon by counsel for the appellant, the court said:

"The plaintiffs, however, aver that they were willing and able to make a conveyance of a good title, and offered so to do on the 28th day of September, 1821; but this was only

the day before the suit was commenced, and nearly two years after the time fixed for performance."

There was no allegation of an actual tender of a deed, but only of ability and willingness to make one, but it is clearly inferable from what the court said that if that had been within the time limited by the contract it would have been sufficient. Again, it is said in that case that "if the seller is not ready and able to perform his part of the agreement on that day, the purchaser may elect to consider the contract at an end," which is equivalent to saying that if the vendor is ready and able within the limited time he may maintain the action; and that is the precise language in which the jury were instructed in this case.

In the case of *Loud* v. *Pomona Land and Water Co., supra,* the Supreme Court of the United States construed two series of contracts for the sale of real estate, one series of which were substantially like the contract in this case, and exactly like it in that there was no express covenant in those contracts to convey, as there is none in the contract in this case; and the court held that an allegation and proof of readiness and willingness to convey upon receipt of the purchase money was sufficient to enable the vendor to maintain an action for the purchase money, and that an actual tender of a deed was not necessary. That court in that case said:

"In respect to the nine applications for purchase declared in counts forty-one to forty-nine, inclusive, of the declaration, while the terms are not so clearly expressed as in the twenty contracts already considered, it is fairly implied that the instalments of purchase money were to be paid before the land company was under any obligation to convey."

The Supreme Court in that case refers to the cases of *Bank* v. *Hagner,* 1 Pet. 455, and *Washington* v. *Ogden,* 1 Black, 450, referred to by counsel for appellant, and distinguishes them from a case like the present. The contract under consideration contains no express covenant to convey, and the implied agreement to do so can only arise upon the payment

or tender of the purchase money out of which the obligation to convey arises.   This principle is clearly stated in the case of *Papin* v. *Goodrich, supra,* by the Supreme Court of Illinois, where the contract is like the one in this case in every substantial particular.   That court said: "Had Papin, or those representing him, the right to inspect the deed of Goodrich for the property before paying the $35,000?   It has been seen that the contract contains no provision to that effect, and that even the execution of a deed is not expressly provided for, but is simply inferred as a conclusion of law, but that inference is also that the money is first to be paid. Until after that is done, possession is not to be given and no legal duty arises to execute a deed.   Clearly there can be no right to inspect a deed before there is a legal duty on the opposite party to have made it, and ready to be delivered."

But even if the terms of the agreement were such as to have required the appellee to have tendered a deed as a condition precedent to the maintaining of an action on the contract, the appellant waived that by declining to complete the purchase on the grounds other than those relating to the title.   He made no objection to the title, and did not ask to see a deed, but declined to take the property on grounds wholly independent of these considerations.

The refusal of the vendee to pay the purchase money and receive the deed, on a specific ground alleged by him, untenable in law, is a waiver by him of the actual tender of a deed by the vendor where tender would otherwise be necessary, and the vendor in such case may maintain an action on the contract by alleging and proving ability and willingness to make a good title within the time specified in the contract.   *Carpenter* v. *Holcomb,* 105 Mass. 280; *Curtis* v. *Aspinwall,* 114 Mass. 187; *Galvin* v. *Collins,* 128 Mass. 525.   The reason for this rule is that the law does not require the performance of an useless act.   For the appellee to have procured the execution of the deed by Berrett, and the tender thereof to appllant, would have been

an useless ceremony on his part, when he had already been substantially notified that appellant would not receive it and pay the purchase money. And it is immaterial whether his refusal was based upon his inability to procure the money, as testified by Maddox, or upon appellant's claim that under the terms of the contract he had an option to take the property or forfeit the $200, as testified by appellant. Each ground is equally untenable as an excuse for non-performance. Had he expressed his willingness to complete the purchase upon receiving a good title, there can be no doubt but a proper deed would have been tendered him. No question is made but that the legal title was in the trustees, Morris and Berrett. A deed in proper form from them and Le Duc would have transferred that title to appellant. The court below instructed the jury that the deed offered in evidence, if it had been signed by Berrett, was in proper form to convey the legal title, and as the deed is not brought before this court by the appellant, it must be presumed that the construction of it by the trial court was correct. The appellant supposed that he was not bound by the contract to take the property and pay for it according to the terms thereof. In this he was mistaken, and it is not in the power of the court to relieve him from the consequences of that error. The court below correctly instructed the jury, and although the evidence is conflicting in some particulars, it is sufficient in point of law to support their finding, that the appellee was able and ready to convey a good title to the real estate to appellant within the time limited in the contract.

The only remaining question relates to the measure of damages, and upon the proper rule governing in such cases the counsel for the respective parties agree. Counsel for the appellant states it as follows in his brief: "In contracts for the sale of real estate, when the vendee refuses to receive the deed and pay for the land, the measure of damages which the vendor may recover in a suit at law is the

difference between the price agreed to be paid for the land and its real value at the time the contract is broken." The appellee's counsel states the rule in substantially the same language, and the instructions to the jury are in accordance therewith, all of which is in harmony with the great weight of authority. *Griswold* v. *Sabin*, 51 N. H. 167; *Old Colony R. Co.* v. *Evans*, 6 Gray, 25, and authorities there referred to. The point in controversy upon this branch of the case is not the rule as to the proper measure of damages, but as to what evidence may properly be submitted to the jury for their consideration, the appellant contending that it was error to permit them to consider the price for which the property sold in January, 1894, and evidence of witnesses as to its value in the fall of 1893. But this question has been disposed of in considering the second, third and fourth assignments of error in relation to the admission of evidence. In this connection it may be stated that appellant gave evidence by Dr. Bovee, who had negotiated with Maddox looking to a purchase of the property, tending to prove the value of the property several months prior to the sale to appellant. This was the same class of evidence as that in behalf of appellee, the only difference being that it was not quite so far removed from the date of the breach of the contract as some of that on behalf of the appellee. The jury was properly instructed that while they might consider all this evidence, they were to ascertain the value of the property on the day the contract was to have been completed, and that appellant was liable only for the difference between that sum and the contract price, if anything. In this there was no error.

Appellant's counsel contends that, inasmuch as the appellee's evidence shows that he received an offer of $12,500 for the property in November, 1893, the jury ought to have been instructed that they could not place a lower value than that upon it. To this position there are several answers: First, while Maddox's letter to appellant of November 17,

1893, stated that $12,000 is the highest offer he had been able to obtain, in his evidence he states that that was not an absolute offer, rendering it a question for the jury whether he in fact received such an offer. Again, he advised appellant that such an offer had been made, asking for an answer, and received none, leaving him to act upon his own judgment. Besides, appellant's counsel did not ask the court to give any instruction upon that particular question, and cannot now complain of an omission of the court to instruct upon a point to which its attention was not called.

Appellant also complains that the jury found the value of the property at the expiration of the fifteen days' limit fixed by the contract to be what it sold for at public auction in January following. But that was a question fairly submitted to the jury, and there being sufficient evidence to support the finding, this court has no jurisdiction to determine whether the verdict is contrary to the weight of the evidence upon this point. Besides, there are strong authorities for the position that the difference between the contract price and the price obtained at an auction sale, of which the vendee had notice, as in this case, while not conclusive, is a good criterion of the damages actually sustained. 3 Sedgwick on Damages, Sec. 1023; *Gardner* v. *Armstrong*, 31 Mo. 538.

This disposes of all the assignments of error; and none of them being well taken, it follows that the judgment must be *affirmed, with costs.*