# N. G. BEHLES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 46557. Promulgated July 19, 1934.

*Samuel J. Moran, Esq.*, for the petitioner.
*Harold Allen, Esq.*, for the respondent.

OPINION.

McMahon: We are here called upon to determine the amount of capital gain derived by the petitioner upon the disposition in 1926 of his stock interest covered by the agreement of January 15, 1913. There is no controversy as to the amount received upon its disposition. The petitioner received $100,000 in cash and 2,500 shares of stock of the Wrigley Co., which stock was worth $53.50 per share or a total consideration, including cash, of $233,750. Nor is there any dispute as to the amount of the cost of the stock interest to the petitioner, which was $21,550. The Commissioner in the deficiency notice used a figure of $21,500 as representing the cost, but concedes in his brief that that was in error and that the profit which he determined in the deficiency letter should be reduced by the amount of $50. The principal issue presented by the parties relates to the proper basis to be used in the determination of the gain. They have presented this issue upon the theory that we are governed by section 204 (b) of the Revenue Act of 1926.[1] The respondent held that the purchase price which was agreed to be paid by the petitioner for the stock interest on January 15, 1913, which he now admits was $21,550 instead of $21,500, establishes the value of the stock on March 1, 1913. The petitioner contends that the fair market value on March 1, 1913, was $7,655 per share, or a total value of $191,375, as claimed by him in his return for the year 1926. It is his position that Shoup, in order to induce the petitioner to enter the employ of the Shoup Co., sold him the stock at a figure below its

[1] Sec. 204. (b) The basis for determining the gain or loss from the sale or other disposition of property acquired before March 1, 1913, shall be (A) the cost of such property (or, in the case of such property as is described in paragraph (1), (4), or (5), of subdivision (a), the basis as therein provided, or (B) the fair market value of such property as of March 1. 1913, whichever is greater. In determining the fair market value of stock in a corporation as of March 1, 1913, due regard shall be given to the fair market value of the assets of the corporation as of that date.

fair market value and that therefore that transaction does not establish the fair market value of the stock at March 1, 1913.

The petitioner also contends that since the consideration received by him upon the disposition of his stock consisted in part of stock in the Wrigley Co., and in part of cash, the transaction comes within the provisions of section 203 (b) (1) and (d) (1) of the Revenue Act of 1926,[2] and that therefore only the cash received is taxable and that only if it exceeds the basis of the Shoup Co. stock. This contention of the petitioner is obviously without merit, since section 203 (b) (1) specifically excepts stock from its general application. The transaction is taxable to the extent that its fair market value exceeds the basis of the property disposed of. We therefore turn to a consideration of the March 1, 1913, fair market value of the petitioner's interest in the Shoup Co. stock.

Under the agreement which we have set forth in our findings of fact, A. D. Shoup or the Shoup Co. had the option of purchasing this stock interest from the petitioner within 60 days from the date the petitioner ceased his employment with the Shoup Co. for any cause, at the then book value. By the terms of the contract of purchase the reservations on the stock in the petitioner's hands were unlimited as to time. So far as we are informed the terms of the contract of purchase were not varied at any time. Thus at March 1, 1913, the stock was still subject to the same reservations. The proof does not show to whom the petitioner disposed of his interest in this stock.

Obviously we are concerned with the fair market value as of March 1, 1913, of the same property that was bought and later sold. *James Couzens*, 11 B.T.A. 1040, 1161. Therefore, we are concerned with the fair market value as of March 1, 1913, of the petitioner's stock interest, subject to the reservations contained in the contract of purchase.

A fair sale of property when not too remote from the date of valuation is the best evidence of the value of such property. *Andrews* v. *Commissioner*, 38 Fed. (2d) 55; affirming *Estate of Effie*

---

[2] Sec. 203. (b) (1) No gain or loss shall be recognized if property held for productive use in trade or business or for investment (not including stock in trade or other property held primarily for sale, nor stocks, bonds, notes, choses in action, certificates of trust or beneficial interest, or other securities or evidences of indebtedness or interest) is exchanged solely for property of a like kind to be held either for productive use in trade or business or for investment or if common stock in a corporation is exchanged solely for common stock in the same corporation, or if preferred stock in a corporation is exchanged solely for preferred stock in the same corporation.

\*  \*  \*  \*  \*  \*

(d)(1) If an exchange would be within the provisions of paragraph (1), (2), or (4) of subdivision (b) if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.

*Andrews*, 13 B.T.A. 651; *Hazelton* v. *Le Duc*, 10 App. D.C. 379; *Ruppert* v. *McArdle*, 42 App. D.C. 392; *Belridge Oil Co.*, 26 B.T.A. 810; and *Perfex Corp.*, 27 B.T.A. 120. Here the same stock interest was purchased by the petitioner about six weeks before March 1, 1913, on January 15, 1913, for $21,550. There is nothing to show that this was not a fair sale which correctly reflected the fair market value of what the petitioner actually received under the contract. This sale was not too remote from the date of valuation and in our opinion must be taken as establishing the fair market value at March 1, 1913, of the stock interest acquired by the petitioner. We have no other proof of the fair market value on that date of the precise stock interest which the petitioner then held, subject to all of the reservations contained in the contract.

The petitioner testified that at the time he purchased this stock interest from Shoup it was his opinion that the value of the stock was about $200,000. He testified further that the fair market value of the stock on March 1, 1913, was, in his opinion, formed at that time, about $200,000 and that it is now his opinion that on or about March 1, 1913, the fair market value of the stock was about $200,000. He testified that his opinions were based upon the earnings of the company, the prospective earnings, the business conditions, the sales connections, the personalities of the officers, and their trade connections. The petitioner, in forming his opinion as to the value of this stock, thus apparently had in mind the stock free from the reservations which then existed. His testimony and his opinion therefore are of no aid to us in determining the fair market value on March 1, 1913, of the stock interest which he received, limited as it was by the contract of purchase. There is in the record evidence which tends to indicate that the stock freed from the burden of these reservations would have had a fair market value on March 1, 1913, considerably in excess of the amount which the petitioner agreed to pay for this stock interest on January 15, 1913. However, this is likewise of no aid to us in determining the fair market value on March 1, 1913, of the stock interest in question, subject to the reservations of the purchase agreement. As heretofore stated, there is no evidence whatever in the record from which we can determine the fair market value on March 1, 1913, of the identical stock interest which the petitioner agreed to purchase on January 15, 1913, and later sold in 1926, except the evidence of the amount which the petitioner agreed to pay for such stock interest on January 15, 1913. In this situation the holding of the respondent, in so far as he holds that the fair market value of this stock interest on March 1, 1913, is established by the agreement of January 15, 1913, to purchase the same, must be sustained. Upon the recomputation the proper basis to be used in the computation of gain is $21,550.

The principal case relied upon by the petitioner is *James Couzens*, *supra*. There the stock was not limited as to selling price. The owner was merely required to offer the stock to the other stockholders for sale at the best price obtainable. In these respects that case is clearly distinguishable. Nor are any of the other authorities cited by the petitioner governing. Here the petitioner is required by the agreement to sell *at book value* in the event that the reserved option is exercised; and there is no evidence whatever establishing the book value as of any date.

Both parties proceeded, in the trial and the argument, upon the *assumption* that the petitioner acquired this stock prior to March 1, 1913, and that the proper basis for the determination of gain or loss upon its disposition is its cost or fair market value at March 1, 1913, whichever is greater, under the provisions of section 204 (b) of the Revenue Act of 1926. In our opinion there is support in the record for the view that we are concerned with section 204 (a) of the Revenue Act of 1926,[3] which deals with property " acquired " after February 28, 1913. The word " acquire " is defined in Black's Law Dictionary as follows:

ACQUIRE. In the law of contracts and of descents; to become the owner of property; to make property one's own. *Wulzen* v. *San Francisco*, 101 Cal. 15, 35 Pac. 353, 40 Am. St. Rep. 17.

It is our opinion that there is support in the record for the view that the stock was not " acquired " by the petitioner until January 12, 1914, the date it was " fully paid for by dividends."

The agreement contains the following:

\* \* \* subject to the foregoing, that when said stock has been *fully paid for by dividends* [emphasis supplied] he will deliver the same to the said *Nicholas G. Behles.*

Hence, the stock was not to be delivered to the purchaser, the petitioner, until it was *fully paid for.* Such payment was a condition precedent. Too, it was to be thus paid for *by dividends.* There was no obligation on petitioner's part to pay for it in any other manner. We consider it unnecessary to decide whether the seller could have been compelled to accept payment in any other manner. On the other hand, petitioner was expressly relieved from any *other respon sibility or obligation* to pay for it. If there had been insufficient dividends *earned* \* \* \* *and declared* so that the stock could not have been *fully paid for by dividends* this would, under the terms of the agreement, never have occurred and there could have been no obligation on the part of the seller to *deliver the same* (stock), and the petitioner never would have acquired the stock pursuant to the pro-

---

[3] Sec. 204. (a) The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that—[exceptions immaterial].

visions of the agreement. Furthermore, this contingent liability on the part of the seller to *deliver the same* (stock), when *fully paid for by dividends* was *subject to the foregoing,* which means *subject* to all of the "foregoing" provisions of the agreement. Among other things it was *subject* to the "option within sixty days from the date such employment ceases, no matter from what cause", of the seller or the issuing corporation *to purchase said shares of stock at its then book value.* If petitioner had resigned or had been discharged and the seller or issuing corporation had exercised the option before the stock had *been fully paid for by dividends,* the stock would never have been delivered "to the said" petitioner, pursuant to the agreement, and he could never have compelled delivery pursuant to the same. Notwithstanding that the option continued in full force beyond the time when the stock had *been fully paid for by dividends,* entitling the petitioner to delivery of *the same* pursuant to the agreement, the petitioner "acquired" the stock on that date, January 12, 1914, *but not before.* He could not under all the facts and circumstances have compelled delivery of the stock before that date, pursuant to the agreement. From a careful consideration of the agreement it is our opinion that, under all the facts and circumstances, there was no intention on the part of the parties to it to transfer either title or possession of the stock to the petitioner before it was *fully paid for by dividends,* which occurred on January 12, 1914.

It is significant that the option is to *purchase,* not to repurchase, which is open to the inference that the parties appreciated that no purchase had been completed at the date of the agreement, which was before the stock was *fully paid for by dividends.*

It is true that the preamble to the agreement recites that the seller has "sold" the certificate for the shares to petitioner, but we must look to the whole of the agreement which follows the preamble and to all of the facts and circumstances to ascertain what occurred in this respect, and more particularly to ascertain when the stock in question was "acquired" by the petitioner. We are governed here by the construction of the agreement as a whole and more particularly by the provisions from which it derives its vitality.

Under the provisions of section 204 (a), *supra,* the basis for the determination of gain or loss upon the disposition of property acquired after February 28, 1913, is its cost. The cost of this stock to the petitioner is shown to have been $21,550. Hence this view leads to the same result as the view presented by the respondent upon the assumption that the stock interest was acquired by petitioner on January 15, 1913, which has been heretofore discussed and disposed of herein.

*Decision will be entered under Rule 50.*