PHŒBE FRIDENBURG, APPELLANT, VS. EMILY R. WILSON, EXECUTRIX, ET ALS., APPELLEES.

1. Where a plaintiff seeks to be subrogated to satisfied judgment liens on the ground that moneys loaned by him to the defendant in execution were so loaned for the purpose of paying such judgments, and were so applied, the judgment creditor is not a necessary party in a case where no decree is prayed against him.

2. The estate of a deceased testator is primarily liable to his debts. As to debts incurred by his executrix and executor subsequent to his death the estate is not liable unless the executrix and executor have power given them to create such charges upon the trust fund enforceable at the suit of the creditor, and such creditor dealing with the executrix and executor is held to notice of the trust and its nature.

3. When a testator directs his business to be carried on after his death, *prima facie* the only fund liable to subsequent creditors of his executors carrying on the business is that which was employed in the business by the testator. To authorize such creditors to resort to any other fund for payment the testator, by his will, must give the power in clear and unambiguous language. Where, in the will, there is a simple direction by the testator to his executor to carry on his business as he conducted it, so long as in his judgment it should be deemed best for his estate, to be closed and settled by his executor whenever he thought best to do so, and such will gives a power of sale of his real estate, no other portion of his estate is subject to debts incurred in the business by the executor except that which was employed in the business by the testator.

4. A party loaning money to such executor to satisfy judgments obtained by a creditor against such executor for debts incurred in the business of the testator so continued after his death acquires no right against any of the estate not connected with the business at the death of the testator. Such portion of the estate as was not thus employed cannot be charged by a creditor. It is assets held by the executor in trust to pay *the debts of the testator*, and then to discharge legacies. To any proceeding seeking to charge such property for such debt the legatees and devisees having an interest under the will are necessary parties, and a

judgment at law against the executor alone is not binding upon them.

5. A power under a will to sell real estate, the subject of named trusts does not give authority to borrow money from third persons, and to thereby involve the whole of the trust property.

Appeal from the Circuit Court for Madison county to which this case was transferred from Duval county.

The provisions of the will of Converse Parkhurst are as follows :

First. I give, devise and bequeath all my property, both real and personal of every name and kind, and wheresoever situated, unto my executrix and executor hereinafter named, upon the following terms : First, I direct my executrix and executor first to pay all my just debts.

Second. I direct, and it is my will, that my business at Jacksonville and Palatka, Florida, be carried on by my executrix and executor in the same manner as I have conducted it, so long as in their judgment it shall be deemed best for my estate, to be closed and settled by them whenever they think best to do so.

Third. I give and bequeath unto my sister Rhoda Devereaux, of St. Albans, Maine, the sum of one thousand dollars.

Fourth. I give and bequeath unto my sister, Nancy Parkhurst, the sum of one thousand dollars.

Fifth. I give and bequeath unto my sister, Mrs. Lucy P. Hussey, of Pottsville, Penn., the sum of one thousand dollars.

Sixth. To the three daughters of my deceased brother Daniel, I give the sum of one thousand dollars, to be divided between them, share and share alike.

Seventh. To my niece, Mrs. Wildott Smith, I give the sum of five hundred dollars.

Eighth. I direct the foregoing legacies to be paid as soon as conveniently may be after my decease.

Ninth. It is my will, and I direct that my children shall be supported and liberally educated, and the expenses paid out of my estate by my executrix and executor hereinafter named. My children to be supported by the estate until they respectively reach the age of twenty-one years, and after my son reaches the age of twenty-one, and until my daughter reaches the age of twenty-one, unless she shall die before my son, he shall be paid annually such sum as is considered proper for the support of my daughter until she reaches the age of twenty-one years.

Tenth. I will and direct that my beloved wife, Emily R., shall be paid quarterly until my youngest child becomes twenty-one years of age, such a sum as shall be necessary to support her in the style in which we have lived for the five years next previous to my death.

Eleventh. I will and direct that when my youngest child attains the age of twenty-one years, my estate, both real and personal, shall be divided equally between my wife and living child or children, share and share alike.

Twelfth. I hereby authorize and empower my executrix and executor to sell and convey the whole or any portion of my real estate, at any time or times they think best to do so.

Thirteenth. I hereby nominate and appoint my wife, Emily R. Parkhurst, and my nephew, Converse P. Devereaux, executrix and executor and trustees of this my will.

The other facts are sufficiently stated in the opinion.

*John Earl Hartridge* and *M. C. Jordan* for Appellant.

*A. W. Cockrell* for Appellees.

MR. JUSTICE WESTCOTT delivered the opinion of the court.

The case is as follows:

This is an appeal from a decree sustaining defendants' demurrer to plaintiff's bill, and dismissing the bill by the Judge of the Third Circuit, Madison county. The facts set up in the bill are as follows: Converse Parkhurst died testate in 1872. His will is an exhibit to the bill. Under it all of the property of testator was conveyed to the executrix and executor, Emily R., his wife, and Converse P. Devereaux, " upon the terms " therein stated. He directed that his business at Jacksonville and Patlatka, Florida, should be carried on by his executrix and executor in the same manner as he had conducted it, so long as in their judgment it should be deemed best for his estate, to be closed and settled by them whenever they thought best to do so. After some special legacies to his relatives he directed the support and education of his children, and the support of his wife until his youngest child should become twenty-one years of age. He then directed that his property be divided between his wife and children living, equally. Under the will he gave the executrix and executor full power to sell and convey all or any portion of his real estate at any time they thought best to do so. The executrix and executor qualified and received letters. Emily R. married James Y. Wilson. On the 19th of June, 1878, Devereaux was enjoined from further exercising the powers of executor. Since the death of the testator a large number of persons recovered judgments against the said Devereaux, executor, and Wilson, executrix, for goods and merchandise sold and delivered to them in such official capacity while engaged in and carrying on the business left by said Converse Parkhurst at his death, which business they were au-

thorized by the will to carry on. Previous to and on the 9th day of November, A. D. 1878, the estate being hopelessly insolvent, certain of said judgment creditors having sued out executions were taking proceedings to sell portions of the real property of the estate, and on that day, in order to pay off or partially satisfy said judgments, Emily R. Wilson, executrix, and her husband obtained a decree of the court of chancery empowering them to borrow from plaintiff, Phœbe Fridenberg, the sum of six thousand dollars for two years, with interest at twelve per cent. per annum, and to secure the same by a mortgage on certain real property, which mortgage was duly executed and delivered by the executrix and her husband to plaintiff November 18, 1878, and plaintiff paid over the sum of six thousand dollars to said executrix and her husband. On the same day and out of said money they paid to the judgment creditors aforesaid, having liens upon said real property, the sum of $1,759.62. The bill gives the names of the amounts paid to the judgment creditors, and the receipts of such creditors are exhibits to the bill. These receipts recite that the executrix and her husband desire to negotiate a loan from plaintiff and to secure it by a mortgage, and that the judgment creditors waive any lien they may have in favor of plaintiff upon the land proposed to be mortgaged in consideration of the sums paid them. The amounts thus paid were not sufficient to satisfy the judgments, and several months thereafter certain of said judgment creditors (the bill gives their names) directed the sheriff of Duval county to levy upon and sell to satisfy the balance of their judgments certain "real property of said estate." The land is described at length in the bill. Certain parts of the estate mentioned were sold by the sheriff to defendant, Thomas M. Wilson, under the executions. The bill describes the property sold, gives the dates of sale and prices

paid. Deeds for the land thus sold were executed and delivered by the sheriff to said Thomas M. Wilson. Certified copies of the deeds are exhibits to the bill. After the execution and delivery of said deeds to Thomas M. Wilson he conveyed to "innocent purchasers" certain portions of the land. The bill gives a description of such as was thus sold, and plaintiff makes no claim against them.

Plaintiff alleges that she is informed and believes that the proceeds of the said sales by Thomas M. Wilson were applied to the use and benefit of the said estate, and that certain property, (mentioning it) which the bill describes as having belonged to the estate and as purchased by Thomas M. Wilson, now stands upon the records of the deeds of said county in the name of Thomas M. Wilson. As to this property plaintiff, upon information and belief, alleges that it is actually in the possesssion of the executrix and her husband; that Thomas M. Wilson " is not and was not a *bona fide* purchaser of said property " at said sales; that he did not pay the amount bid on the said piece of property at said sales, and that said amounts or sums of money were paid by said James Y. Wilson out of funds then in his hands belonging to the estate of C. Parkhurst, deceased; that James Y. Wilson was a defendant in all said judgments and was the person who bid at the sale of lot 4 in block 10, and that the bid for said lot was knocked off to said Thomas M. Wilson, at the request of said James Y., the said Thomas M. not being present at the sale, and that all the acts performed by the said James Y. Wilson in and about said sale were done and performed to defeat the liens of the other of said judgment creditors mentioned and to delay, hinder and prevent them from subjecting said property to the payment of their judgments; that said lot one (1) in block one hundred and thirty-three (133), and also another piece or parcel of land embraced in the sheriff's deed, (plaintiff describes

it in the bill) was bid off, as your orator is informed and believes, by Geo. S. Wilson, the brother of said James Y., in the name of Thomas M. Wilson, their nephew, but for the benefit of the estate of C. Parkhurst, and was paid for out of funds of the said estate or of said James Y. Wilson, who was a defendant to said judgments rendered; that Thomas M. Wilson was not present at said sale; that all the acts done and performed in and about said sale were in the interest of said James Y. Wilson to defeat the liens of other of said judgment creditors, and to delay, hinder and prevent them from subjecting said property to the payment of said judgments. The defendants having failed to pay the mortgage debt of $6,000, plaintiff filed a bill of complaint to subject said mortgaged property to sale. Defendants, Emily R. and James Y. Wilson, demurred to said bill; that the demurrer was overruled. A plea setting up that the children of said Converse Parkhurst were not parties, and that at and before the death of said Converse Parkhurst a part of said property, naming it, had been used as a homestead and had been so used by his wife and children since his death, and upon appeal to the Supreme Court said court adjudged that the order authorizing the executrix to borrow the money was void against said children and said property (see Wilson vs. Fridenburg, 19 Fla., 461); that said homestead property constituted and composed the principal security upon which said loan was made, and that the remaining property mortgaged is utterly inadequate to satisfy the sum now due on said mortgage, said sum being about $10,000; that said estate is " utterly insolvent and has no other property except a lot of land of the value of about $400, which is about to be sold under other judgments and executions against said estate." Plaintiff then alleges that the balance due upon the executions and judgments men-

tioned was paid by sales of certain property in Palatka, Putnam county, Florida.

Plaintiff prays: That an account may be taken of the amounts of money paid on said judgments by defendants out of the money paid them by plaintiff for such purpose, and interest thereon ; that the said deeds from the sheriff to said Thomas M. Wilson, except in cases where the said Thomas M. has conveyed the land to innocent purchasers, be decreed to be void ; that so much of said judgments as were paid by said Emily R., executrix, and James Y., her husband, out of the moneys loaned them by plaintiff, may be decreed to be " unsettled and paid," so far as plaintiff's rights are concerned ; that the property recorded in the name of Thomas M. Wilson (describing it) may be decreed to be subject to the lien of said judgments so far as the same were paid out of the moneys loaned to said Emily R., executrix, and her husband ; that plaintiff may be decreed to be subrogated to the lien of said judgments and to stand in the place and stead of said judgment creditors, and that there may be a sale of said property, or so much thereof as will satisfy and indemnify her for the money paid on the said judgments out of the funds loaned by her as aforesaid and as may appear by the accounting prayed for. Plaintiff concludes her bill with the prayer for other and further relief, &c.

A demurrer to this bill was sustained. The first ground of the demurrer is want of equity in the bill. The consideration of this ground is involved, to a great extent, in the consideration of the other special grounds assigned and will be discussed in connection with them. The next is want of necessary parties, it being insisted that the judgment creditors are necessary parties if a case of subrogation to their liens is made by the bill. Plaintiff alleges first that a part of the funds which she loaned under the order of the

court went to satisfy a part of the judgments against the executrix and executor of the will. She, then, in the last clause of the bill, alleges that the balances due upon these executions and judgments were paid by sales of certain property in Palatka, Putnam county, Florida. Their judgments are, therefore, satisfied. No decree here is prayed against them. They have no interest and are not necessary parties. Whether the land here assailed is sold or not is immaterial to them and the decree in neither event would affect them.

The next ground of demurrer is that " said bill shows that a loan was made by complainant to certain of these defendants of the moneys herein sought to be recovered and the fact of such loan rebuts, repels and contradicts the implication of the trust sought to be asserted by said bill."

I do not understand that it is contended by the plaintiff that she is a *cestui que trust* as to this land. Certainly the facts set up in the bill disclose no such relation. What she claims is an equity independent of any relation of trustee and *cestui que trust*. It is to be subrogated to a lien upon property of the estate, which lien has been relieved by money borrowed from her by the executrix under a decree of the Chancellor and payment of other sums from the property of the estate as against which she claims an equity exists by virtue of the fact that she has loaned money to the executrix and the property thus sought to be subjected is the property of the estate although the title is in a third person, the purchase money, if any was paid for it, being, as she alleges, money of the estate, and the purchase being in fact by the representatives of the trust under the will. In other words, it was still in equity to be treated as the property of the estate subject to her claim for moneys loaned to the executrix under the order of court. Neither of the relations claimed to exist constitute

a trust. She claims reimbursement from the trust property on the ground that she is *ex œquo et bono* entitled to it according to the principles of equity controlling the subject. Scott vs. Dunn, 1 Dev. & Bat. Eq., 425; see cases cited in 30 Amer. Dec., 177.

The other grounds of demurrer are "that said bill shows that said judgment created had no lien whatever on the lands or personal property of the estate," and that "the causes of action as shown by said bill upon which said judgments were recovered was not the covenant or obligation of said Converse Parkhurst." What we say in reference to the case generally, and independent of special reference to these particular grounds, will embrace them.

This case concerns and arises out of express trusts under a will. The claim here made is subordinate to the trust as it results from relations existing between the executrix and the plaintiff subsequent to the death of the testator, and not by virtue of any relation of the plaintiff herself to the testator. The will provides first for the payment of the debts of the testator. To these the estate was first liable independent of a testamentary direction. As to subsequent sums of money borrowed by the executrix, the estate is not liable unless the executrix has the power to create such a charge on the trust fund enforceable at the suit of the creditor.

The exhibits to the bill in this case disclose that the property sought to be subjected to the alleged equity of the plaintiff was property acquired by the testator and the allegations of the bill show that the judgments obtained against the executrix and executor, to the lien of which plaintiff seeks to be subrogated, were for goods and merchandise sold and delivered to them in carrying on the mercantile business of the testator as authorized by the will. By the rendition of such judgments it is not alleged

that the court of law judicially determined that these particular pieces of property were subject to them.   Indeed, for the purpose of disposing of this demurrer, we must treat these judgments as being judgments to be satisfied *de bonis propriis*, as that was the only judgment that could have been rendered at law, and the plaintiff does not allege that they were judgments in terms to be satisfied *de bonis testatoris*.   Unquestionably the executors, as a general rule, are personally liable.   Laible vs. Ferry, 32 N. J., Eq., 795, and cases cited; *Ex-parte* Garland, 10 Ves., 120.   Here there is nothing liable in equity to the claims of these posthumous creditors, under the terms of this will, except the fund employed in business at the time of the death of the testator, and to any proceeding in equity which constitutes an assault of this character upon the trust property, the legatee and devisees are necessary parties as they have an interest.   It is from this fund that the legacies are to be realized.   In the language of the Supreme Court of the United States, Smith vs. Ayer, 101, U. S., 320, " such assets are held by the executor in trust to pay the *debts of the testator* and then to discharge legacies."

Where a testator directs his business to be carried on after his death, *prima facie* the only fund liable to subsequent creditors of his executors carrying on the business is that employed in the business by the testator.   To authorize such creditors to resort in equity to any other fund or property for payment, the will by clear and unambiguous language must authorize it.   The bill in no manner connects this fund with the business.   In this will there is the simple direction to carry on the business as he had done. This is not sufficient to charge general assets not connected with the business.   Laible vs. Ferry, 32 N. J. Eq., 791; Smith vs. Ayer, 101 U. S., 330 ; Burwell vs. Mandeville, 2 How. U. S., 560.

For what these executors did in good faith in obedience to their trust they are entitled in equity to be indemnified out of the property lawfully embarked in the business and from this title to indemnity springs an equitable right of the creditors, very like a lien, to resort to the same fund for payment when their remedy against the executors is unavailing. *Ex-parte* Garland, 10 Ves., 110; McNeil vs. Acton, 2 Eq. R., 21; 2 Perry on Trusts, §810. There is no allegation in the bill that this land had any connection with the business of the testator in Jacksonville or Palatka. For that reason it is clear that there is no claim, much less a lien, of the judgment creditor, or right of indemnity of the executor, (1 Perry on Trusts, §154,) to which plaintiff can be subrogated as against the *cestuis que trust* or legatees under the will. So far as the effect of the mortgage here is concerned, see Wilson vs. Fridenberg, 19 Fla., 461.

The only other equity which the plaintiff can claim against the land, the paper title to which is in Thomas M. Wilson, but which land he alleges, was paid for by the moneys of the estate, must exist by virtue of the loan made to the executrix, if it exists at all.

Plaintiff does not allege any appropriation of this money loaned, other than the $1700 or $1800 applied to the judgments against the executors on account of the trade speculations. We have seen that there is no equity against the assets arising out of this appropriation to the trade judgments except as to the property employed in the trade. Is there any equity arising out of a simple loan to the executrix, no appropriation to any of the purposes of the trust being shown? The power here is to sell any portion of the estate at any time or times the executrix and executor think best. There is no general power to borrow money or contract debts. A power in an executor to sell real property, the subject of named trusts, does not give authority to borrow

money *ad libitum* from third persons, and to involve the whole of the trust property, whether the loan has been applied to the purposes of the trust or not. Where the money borrowed is applied to the purposes of the trust a different question arises. Here there is no such allegation. We do not mean to say that where a power of sale is exercised and there is no collusive purpose that the purchaser is held to see to the application of the proceeds.

While we are limiting general expressions, we also wish to say that we express no opinion as to whether the general power to sell here includes the power to mortgage, or whether any of the estate of the wife is subject to the claim here. We simply state the general rule as to the liability of executors, and rights of those dealing with them, without reference to any questions arising from the fact of the coverture of the executrix or any other fact which, if it exists, might or might not constitute an exception to the general rule.

As to parties, we will again say that the legatees and devisees are necessary parties to any bill which seeks to subject any of the property not embraced in, or which has resulted from the trade. While at law, the trustee is the representative of the estate and will, yet in equity the *cestui que trust* is considered the absolute owner to the extent of his interest. 1 Perry on Trusts, §328.

The decree is affirmed, but it is done without prejudice to any claim which plaintiff may have against defendants personally.