CITY OF MICHIGAN CITY *v.* MARWICK ET AL.

[No. 9,307. Filed June 6, 1917. Rehearing denied April 4, 1918.]

1. PLEADING. — *General Denial.* — *Evidence Admissible.* — Facts pleaded in paragraphs of answer which are not by way of con-

fession and avoidance, but directly controvert or rebut matters pleaded by the complaint, are admissible in evidence under the general denial. p. 299.

2. RECORDS.—*Records of Municipal Corporation.—Right to Examine.*—Taxpayers of a municipality have a right to examine its books and records at proper times for any legitimate purpose. p. 300.

3. MUNICIPAL CORPORATIONS.—*Right of Taxpayers.—Public Funds.—Enjoining Misappropriation.*—Taxpayers of a municipality may enjoin municipalities and their officers from misappropriating public funds under their control, as such funds belong beneficially to the taxpayers. p. 301.

4. MUNICIPAL CORPORATIONS.—*Right of Taxpayers.—Misappropriation of Public Funds.—Investigation and Recovery.*—Where public funds have been misappropriated, and the municipality and its proper officers on demand refuse to proceed to cause such funds to be restored, taxpayers, in the interest of themselves and all others similarly situated, may take steps to recover such funds in behalf of the municipality and to that end may conduct investigations and commence and prosecute appropriate actions. p. 301.

5. MUNICIPAL CORPORATIONS.—*Misappropriation of Public Funds.—Taxpayer's Action to Recover.—Pleading.*—In an action prosecuted by taxpayers of a municipality to recover misappropriated public funds, the complaint must affirmatively disclose their interest as that they are taxpayers. p. 301.

6. MUNICIPAL CORPORATIONS.—*Misappropriation of Public Funds.—Taxpayer's Action to Recover.—Costs and Expenses.*—Where, by steps which they are authorized to take, taxpayers cause to be restored to the municipality funds wrongfully sequestered or misappropriated, they may retain out of the fund or recover from the municipality their reasonable costs and expenses incurred, including the reasonable expense of procuring the services of expert accountants. p. 302.

7. SUBROGATION.—*Right to Subrogation.—Actions.—Complaint.—Sufficiency.*—In an action against a city by expert accountants to recover for certain services, where the complaint alleged that certain citizens and taxpayers of a city apprised the city officials of facts sufficiently definite to require that the city's financial affairs be investigated, and that they requested such officials to cause an investigation to be made, which request was denied, whereupon such citizens and taxpayers engaged plaintiffs, who, on auditing the city's books, discovered a shortage, which was subsequently made good, but not averring that such citizens or taxpayers were insolvent, nor disclosing any other reason why they could not be required to perform their obligations to pay

plaintiffs for their services, so that it was necessary for plaintiffs to resort to subrogation or any equitable principle to recover what was due them, such complaint is insufficient to state a cause of action against the city on the theory of subrogation of the claim the taxpayers held against the municipality, since the facts alleged show only that such citizens and taxpayers were indebted to plaintiffs, and that, having discharged their indebtedness, they might recover from the city the reasonable value of plaintiff's services. pp. 303, 306, 312.

8. SUBROGATION.—*Theory.—Applicability.*—Subrogation is defined as the equity by which a person who is secondarily liable for a debt, and who has paid it, is put in the place of the creditor, and it is applied where a man pays a debt which could not properly be called his own, but which it was his interest to pay. p. 305.

9. SUBROGATION.—*Defenses.—Adequate Remedy at Law.*—The remedy of subrogation being equitable in nature, the established maxims of equity are applicable, and ordinarily one may not resort to subrogation where he has a clear and adequate remedy at law. p. 306.

10. SUBROGATION.—*Actions.—Parties.*—Ordinarily the remedy by subrogation cannot be applied unless those whose rights will thereby be affected are parties to the proceeding. p. 306.

11. SUBROGATION.—*Actions.—Parties.*—In an action by expert accountants against a city for subrogation of the rights of a committee of citizens and taxpayers who had employed them to examine the city's books, the citizens' committee were necessary parties in view of the fact that the amount of compensation to be paid plaintiffs was in dispute. p. 314.

From LaPorte Circuit Court; *Thomas W. Slick,* Special Judge.

Action by James Marwick and others against the city of Michigan City. From a judgment for plaintiffs, the defendant appeals. *Reversed.*

*Theron F. Miller,* for appellant.
*Hickey & Wolfe,* for appellees.

CALDWELL, J.—Appellees, in 1906, as expert accountants, audited certain official books and records of appellant city, by the procurement of a certain organization of citizens and residents of appellant known as the "Citizens' Committee." Appellees

brought this action against appellant to recover compensation for such services. A trial resulted in a verdict for $2,000 principal, $960 interest, total $2,960, on which judgment was rendered. The errors assigned in this court and not waived are based on the overruling of the demurrer to the complaint, the sustaining of the demurrer to appellant's fifth paragraph of answer, and the overruling of the motion for a new trial.

The complaint is lengthy, but its substance is as follows: In August, 1906, certain citizens and residents of Michigan City became convinced, through rumor and current report, that by reason of errors in bookkeeping or otherwise the funds of the city had not been properly or legally accounted for by the then treasurer and his immediate predecessor for the period from September 1, 1898, to December 31, 1905; that such citizens thereupon determined to institute a careful investigation, and to that end to form an organization of citizens and taxpayers, to employ counsel and engage the services of capable accountants; that, following out such plan, there was formed in said city an organization known as "the Citizens' Committee"; that said committee for the purpose of having the financial books and records of the city examined, to the end that the then condition of its funds might be ascertained, secured the assistance of appellees, who are chartered accountants, and who pursuant to an understanding and agreement with the committee, thereupon proceeded to examine such books and records for the period from September 1, 1898, to December 31, 1905; that in doing such work appellees were first employed by said "citizens' committee and taxpayers' league of said Michigan City on behalf of

said city and for the benefit of said city"; that prior to causing said work to be commenced, said taxpayers' league had informed the mayor and common council of the city of their belief that a large sum of the funds of the city had been misappropriated within the period aforesaid, and requested and urged that an examination and audit of the financial books and records of the city be made by such officials, but that they refused to do so; that thereupon appellees, at the request of said citizens' committee, commenced and prosecuted such investigation; that soon it became evident to appellees, to the committee, and to such officials, that the treasurers of the city within the period aforesaid had committed serious errors in the management of the finances of the city, whereupon "said city officials including the mayor and members of the common council * * * directed, approved and assisted these plaintiffs with their said work, and continued from time to time to consult with, advise, direct, outline and amplify said examination and audit that said plaintiffs were making under the direction of said committee and said city officials"; that appellees, by an examination of the financial books and records for the period from September 1, 1898, to November 30, 1905, ascertained that the city treasurer in office during said period possibly by mistake had failed to account for and had appropriated to his own use $3,082.63 of the city's money; that such treasurer on being apprised of the facts paid such sum into the office of the treasurer of the city, and to his successor then in office; that said money was recovered "solely as a result of said audit and examination of said books by these plaintiffs, and with the approval and under the direc-

tion and at the instance of said city officials and the said citizens' committee''; that an examination of the books and records in the city treasurer's office for the period from November 30, 1903, to January 1, 1906, disclosed that the treasurer's accounts were short $10,383.87, ''which shortage was discovered by the audit made by these plaintiffs at the request of said citizens' committee, and with the approval and under the direction of said city officials of Michigan City; that as a result of said investigation and audit made by these plaintiffs, there has been paid into the office of the treasurer of Michigan City, Indiana,'' $13,- 466.50; that at the request of the citizens' committee, and with the knowledge and approval and under the direction of the city officials of said city, appellee devoted a great deal of time to such examination, and that $6,000 is reasonable compensation therefor; that repeated demands have been made for the payment of said sum to appellees, which demands have been refused, and that by reason of the premises there is due appellees $6,000 and interest; wherefore they ask judgment for $8,000.

Appellant filed an answer in five paragraphs, the first of which was a general denial. The matter pleaded by the second, third, and fourth paragraphs was admissible in evidence under the general denial, as such answers were not by way of confession and avoidance, but the facts thereby pleaded were of a nature directly to controvert or rebut the facts pleaded by the complaint. Such paragraphs, however, were not challenged by motion or demurrer, and we, therefore, do not outline their substance. The fifth paragraph of the answer was in substance that appellees were not residents of Indiana;

or inhabitants or taxpayers of Michigan City, Indiana, and therefore had no right to bring or maintain this action.

The question whether the court erred in sustaining the demurrer to the fifth paragraph of answer depends on the theory of the complaint. Such paragraph impliedly assumes that the services for which a recovery is sought by the complaint are those services which taxpayers under certain circumstances may cause to be performed in safeguarding public funds, and in causing them to be restored if misappropriated, and for the reasonable expense of which such taxpayers under certain circumstances hereinafter outlined may recover compensation from the municipality or body politic involved. If such is the theory of the complaint, and it may be said that the overruling of the demurrer to it presents the same question as the sustaining of the demurrer to the fifth paragraph of answer, since the former contains no averment that appellees are or were taxpayers of Michigan City. We therefore proceed first to consider the sufficiency of the complaint and incidentally its theory.

Taxpayers of a municipality have a right to examine its books and records at proper times for any legitimate purpose. *State, ex rel.* v. *King* (1900), 154 Ind. 621, 57 N. E. 535; 2 Dillon, Mun. Corp. (5th ed.) §560; *State, ex rel.* v. *Williams* (1903), 110 Tenn. 549, 75 S. W. 948, 64 L. R. A. 418, and note; *Matter of Egan* (1912), 205 N. Y. 147, 98 N. E. 467, 41 L. R. A. (N. S.) 280, Ann. Cas. 1913E 56, and note.

They may also proceed in equity to enjoin municipalities and their officers from misappropriating pub-

lic funds under their control. Such right is 3. grounded on the relation which taxpayers bear to the municipality, which relation is analagous to that existing between the stockholders of a private corporation and the corporate entity. By reason of such relation, public funds under the control of the municipality and its officers belong beneficially to the taxpayers, and hence where the necessity to do so exists, they may take steps to protect such funds. *Kimble* v. *Board* (1903), 32 Ind. App. 377, 66 N. E. 1023; *Zuelly* v. *Casper* (1902), 160 Ind. 455, 67 N. E. 103, 63 L. R. A. 133; *Pierce* v. *Hagans* (1908), 79 Ohio St. 9, 86 N. E. 519, 36 L. R. A. (N. S.) 1, and note, 15 Ann. Cas. 1170. See, also, note to *Sutton* v. *Buie,* L. R. A. 1915D 178.

Where the misappropriation of public funds has been accomplished, and the municipality and its proper officers on demand refuse to proceed to 4. cause such funds to be restored, taxpayers in the interest of themselves and all others similarly situated may take steps to recover such funds in behalf of the municipality, and to that end may conduct investigations, commence and prosecute actions, etc. In any such action, however, the 5. complaint must affirmatively disclose their interest as that they are taxpayers. *Zuelly* v. *Casper, supra; Davis* v. *Fogg* (1881), 78 Ind. 301; *Wright* v. *Floyd* (1908), 43 Ind. App. 546, 86 N. E. 971; 5 McQuillen, Mun. Corp. §2585; 4 Dillon, Mun. Corp. (5th ed.) §1580; *Cathers* v. *Moores* (1907), 78 Neb. 13, 110 N. E. 689, 14 L. R. A. (N. S.) 298 and note; 28 Cyc 1747.

Where by steps which they are authorized to take as measured by the foregoing propositions, taxpayers

6.  cause to be restored to the municipality public funds theretofore wrongfully sequestered or misappropriated, they may retain out of the fund or recover from the municipality their reasonable costs and expenses incurred, including the reasonable expense of procuring the services of expert accountants. *Kimble* v. *Board, supra,* and cases.

We proceed to consider the complaint in the light of the foregoing propositions: It contains no averment that appellees were citizens and taxpayers of Michigan City. They do not sue in such capacity. They seek to recover for services performed as expert accountants under the procurement of a citizens' committee, and alleged to have resulted in the restoration to the city of a large amount of public funds which but for their action would have been lost to the public. It is not possible to determine from the transcript the exact theory of the complaint as adopted by the trial court, and the parties in the court below, or the specific grounds upon which appellees base their right to maintain this action. There are certain allegations pointing to a theory of implied contract between appellees and the city as the allegations, to the effect that appellees under employment by the citizens' committee, commenced the work of examining the books and records of the city, whereupon, while they were engaged at such work, the mayor and members of the common council from time to time consulted with, advised and assisted appellees, and directed, outlined and amplified such work. However, appellees in this court do not contend that the complaint states a cause of action on the theory of contract, either express or implied, between them and the city. Their contention here is that the complaint

is good on the theory of subrogation. The argument is as follows: Certain taxpayers demanded that the city officials cause the books to be audited; the demand was refused; appellees thereupon under employment by such taxpayers did the work which resulted in the discovery that a city treasurer and his predecessor were short in their accounts, whereupon, by reason of such work and discovery, the amount of the shortage was restored to the city; by reason of the facts such taxpayers were entitled to be reimbursed either out of the fund or by recovery from the city for their reasonable expense in causing such investigation to be made, including reasonable compensation for appellees; that appellees, having performed the work, are entitled to be subrogated to the rights of such taxpayers, and may therefore maintain this action against the city.

As appellees do not claim that the complaint states a cause of action in their favor except as the equitable doctrine of subrogation is invoked, it results that, unless it is sufficient on such theory, we should hold that the court erred in overruling the demurrer by which appellant sought to test its sufficiency. A complaint to enforce a claim for subrogation should state the particular facts upon which the claim is founded. *Lilly* v. *Dunn* (1884), 96 Ind. 220. It may be fairly gathered from the complaint that certain citizens and taxpayers of Michigan City apprised the city officials of facts sufficiently definite to make it appear that reasonable diligence in the discharge of official duty required that the financial affairs of the city be investigated, and that they requested such officials to cause such investigation to be made, and that such

request was denied; that such citizens and taxpayers thereupon proceeded to cause such work to be done, and to that end engaged appellees; that appellees thereupon under such engagement audited the books of the city, discovering a shortage, which was subsequently made good, as alleged, and that thereby such citizens and taxpayers incurred a liability to appellees for the reasonable value of their services. It is our judgment that such citizens and taxpayers under the facts averred are entitled to recover from the city the reasonable expense of such investigation, including any reasonable amount paid by them to appellees for services in conducting such investigation. Viewing the complaint, then, in its aspect most favorable to the correctness of the court's ruling, and it results that such citizens and taxpayers, by reason of the facts averred, are indebted to appellees for the reasonable value of their services, and that such citizens and taxpayers, having discharged such indebtedness, might recover from the city as expenses incurred the reasonable value of such services. The liability of such citizens and taxpayers to appellees is grounded on the mere fact of the performance of the service under an employment to that end. Additional elements must exist, however, in order that the city may be liable to such citizens and taxpayers, among them a demand and refusal, as we have already indicated. We are unable to discover, however, from the facts averred any theory under which appellees may be subrogated to the rights of such citizens and taxpayers. Appellees neither by their prayer for relief nor otherwise in their complaint ask to be subrogated. They disclose no reason why such principle should be applied. They have discharged no obligation

which such citizens and taxpayers were primarily required to discharge. They did nothing under compulsion, or in order to protect themselves in any right. They merely, pursuant to an agreement voluntarily entered into, did a certain work, by which the relation of debtor and creditor exists between them and such taxpayers. There is no allegation disclosing a necessity to resort to subrogation or any other equitable principle in order that they may recover what is due them. There is no allegation that such citizens and taxpayers are insolvent, nor is other reason disclosed why the latter may not be required to perform their obligation. The situation here is somewhat analagous to a case free from fraud, wherein one advances money to another for the payment of an incumbrance against the latter's property, moved merely by a promise of repayment, and without any interest of his own to protect, and in the absence of any agreement for subrogation. It is held in such a case that there can be no subrogation. *Heiney* v. *Lontz* (1896), 147 Ind. 417, 46 N. E. 665, and cases.

8. Subrogation is defined as the equity by which a person who is secondarily liable for a debt, and has paid the same, is put in the place of the creditor. Bispham, Equity (9th ed.) §335. It is applied where a man pays a debt which could not properly be called his own, but which it was his interest to pay. 2 Bouvier, Law Dictionary (Rawle's 3d ed.) 3166, 3167. Other definitions and applications of the principle are found in *Townsend* v. *Cleveland, etc., Co.* (1897), 18 Ind. App. 568, 47 N. E. 707.

While the remedy by subrogation may be somewhat broader than indicated by any of the definitions or

applications above set out or referred to, yet it it is a principle of general application that such remedy is allowed by the courts only when necessary to the ends of justice. *Edinburgh, etc., Mortgage Co.* v. *Latham* (1882), 88 Ind. 88. The remedy being equitable in nature, the established maxims of equity are applicable. Thus, ordinarily one may not resort to subrogation where he has a clear and adequate remedy at law. 37 Cyc 373 and cases.

No reason is disclosed here why appellees may not enforce every right to which they are entitled by proceeding against their employers. Moreover, the members of the citizens' committee are not parties to this action. Ordinarily the remedy by subrogation cannot be applied unless those whose rights will thereby be affected are parties to the proceeding. 37 Cyc 388 and cases; 20 Ency. Pl. and Pr. 997; *Rush's Admr.* v. *State* (1863), 20 Ind. 432; *Citizens', etc., R. Co.* v. *Robbins* (1896), 144 Ind. 671, 677, 42 N. E. 916, 43 N. E. 649.

If appellees may maintain this action on the theory of subrogation, such citizens and taxpayers will thereby be affected, since the former may recover only by basing their right to do so, not only on a liability of the latter to them, but also on a liability of the city to such citizens and taxpayers. The effect of a recovery here, then, would be to discharge the latter liability in a proceeding in which the creditors to such relation are not parties. While the absence of such taxpayers as parties, perhaps, may not be considered in determining the sufficiency of the complaint as against a demurrer for want of facts, it would seem to be legitimate to consider such element in determining the theory of the complaint,

when such theory is not apparent. We do not believe that the complaint states a cause of action for subrogation. It is practically conceded, and in which concession we concur, that a cause of action against the city is not stated on the theory of contract express or implied. It follows that the court erred in overruling the demurrer to the complaint.

- The appellees cite in support of the ruling of the court *Huffmond* v. *Bence* (1891), 128 Ind. 131, 27 N. E. 347, and *Clark* v. *Marlow* (1897), 149 Ind. 41, 48 N. E. 359. In the Huffmond case, Rudisill had conveyed his lands to Huffmond under such circumstances as that a lien was reserved to secure his support and maintenance by the grantee. The grantee having refused to perform the obligation, Rudisill procured performance from another, who, after the decease of Rudisill insolvent, brought an action against the grantee to recover the value of his services, and by subrogation to enforce the lien which Rudisill had reserved against the land. The court, in holding that such remedy was open to him, gives force to the fact that Rudisill died insolvent, and that no other method was open by which the claimant might recover for the services performed. The Clark case is of a like nature. It is apparent that there are equities in each of those cases absent here, calling for the application of the principle of subrogation. Under the circumstances here, we discover no reason why, in an action by appellees against their employers, the latter might not, by a proper notice, bind the city by the result of the litigation on the questions of whether appellees under employment performed such service and the value thereof. As the complaint was not construed in the trial court as proceeding on the

theory that appellees sued as taxpayers, and as appellees do not plant themselves on such theory here, and as such theory is not tenable under the averments, the fifth paragraph of answer is foreign to the complaint, and available error cannot be predicated on sustaining a demurrer to it.

The sufficiency of the evidence is also questioned. If, as we hold, the complaint fails to state a cause of action in favor of appellees and against appellant, we would be required to hold also that the evidence is insufficient to sustain the verdict. The evidence is sufficient that the citizens' committee employed appellees to audit the books and accounts of the city treasurer covering a designated period, and that the committee agreed to pay appellees $2,000 for the work and that appellees did the work. There was no evidence, however, under the views which we have expressed, establishing appellees' right to be subrogated to any claim which such committee might have against the city. For this reason alone, we are required to hold that the evidence is not sufficient to sustain the verdict. It is not necessary that we determine whether the evidence discloses facts upon which such taxpayers might have a claim against the city on account of the expense of conducting such investigation, including the reasonable value of appellee's services. There is no doubt that such taxpayers demanded of appellant through its mayor and common council that such books be audited. It is clear that two successive treasurers were found to be short in their accounts, and that the shortage was made good. It is far from clear, however, that the city through its proper officials refused to cause such audit to be made, or that any work done by appellees

was instrumental in procuring the sums of money that had not been accounted for to be restored to the city. In a general way the facts are as follows: Early in 1906, the city controller discovered irregularities in the books of the city treasurer. For the most part the discrepancy seems to have consisted of a shortage in the treasurer's bank account as compared with the treasurer's and controller's books. The facts having been reported to the city council, two successive committees were appointed to investigate the matter. These committees found the treasurer's bank account short something more than $6,000, and that the treasurer's books had been poorly kept. The treasurer satisfied the committees and common council, and apparently the controller, that he had the money on hand, and he properly entered it on his accounts, and placed it in bank. The council directed that all money thereafter be kept in bank, and ordered the controller to continue the investigation of the city finances. Shortly thereafter the controller, on his own motion, communicated with appellees with reference to their auditing the city's accounts, and afterwards a citizens' committee was organized, which employed appellees to make such an audit for a certain period. Appellees discovered a certain shortage, and were paid for their services by such committee. A few weeks later, possibly in July, such committee or a new organization of citizens, employed appellees to make a complete investigation of the accounts of the city. On August 20, the committee in writing requested the mayor and common council to cause such an investigation to be made, and to employ appellees for that purpose. The city officials refused to em-

ploy appellees, but did not expressly refuse to cause
the investigation to be made. On the contrary, on
the same date, and at the meeting where such request
was made, the officials appointed a committee, com-
posed of two bank cashiers and one ex-county treas-
urer, to have charge of the investigation, and to em-
ploy all necessary assistants. This committee on
August 30 declined to serve, assigning as a reason
that two members of the committee were sureties on
the treasurer's bond, and that there was some objec-
tion to the committee acting on account of such fact.
On the same date, a committee composed of the mayor
and three members of the council was appointed to
conduct the investigation with power to employ ac-
countants, etc. This committee in an interview with
the city treasurer ascertained that he had arranged,
at his own expense, to employ Arthur Young and
Company, a firm of chartered and certified public
accountants, to conduct the investigation. The com-
mittee expressed itself as satisfied with the arrange-
ment, the city not to be charged with the expense of
the investigation. Early in September, Young and
Company commenced such work. A few days later
appellees, under employment by the citizens' commit-
tee consummated August 24, 1906, commenced the
work for which a recovery is sought in this action.
Thereafter two sets of accountants were prosecuting
such investigation independent of each other. Young
and Company completed the work first. The city
adopted their figures, and settlement was made with
the treasurer and his predecessor accordingly. The
accounts of the city have since been based on Young
and Company's report. Both sets of accountants
found shortages, but we are unable to determine from

the evidence whether their figures agreed.  Appellees neither directly nor indirectly made a definite report to the city.  There was evidence that on several occasions they offered to do so on condition that the city would pay them for their services, but that the city officials insisted on seeing the report before they determined whether they would do so.  Early in 1907 controversy arose between the citizens' committee and appellees respecting what was due the latter. The committee insisted that the agreed price was $2,000; appellees denied that there was any agreement as to amount, and insisted on a larger sum.  Subsequently this action was commenced against the city.  It is plain from the evidence that the city by its proper officials did not at any time expressly refuse to cause the accounts of the city to be investigated.  We are not required at this time to express any opinion whether there was evidence justifying an inference of a refusal by implication or by conduct.

For errors indicated, the judgment must be reversed.  The judgment is reversed, with instructions to sustain the demurrer to the complaint, with permission to amend if desired.

### On Petition for Rehearing.

Caldwell, J.—It is not held by the original opinion that the insolvency of appellees' employers is essential in order that the former may appeal to the equitable doctrine of subrogation.  The absence of an allegation of insolvency is mentioned merely by way of illustration in calling attention to the fact that the complaint reveals no reason why it is necessary to invoke that doctrine, in order that appellees may be protected, and that their rights may be fully en-

forced. By outlining some of the circumstances in which, if existing, appellees might possibly through subrogation maintain an action against appellant for the value of their services, we should not be understood as excluding others. That it is difficult to circumscribe specifically all the situations to which the principle of subrogation may be applied is thus expressed: " 'The doctrine of subrogation is not administered by courts of equity as a legal right, but the principle is applied to subserve the ends of justice and to do equity in the particular case under consideration.· * * * No general rule can be laid down which will afford a test in all cases for its application. Whether the doctrine is applicable in any particular case depends upon the peculiar facts and circumstances of such case.' " *Aultman* v. *Bishop* (1898), 53 Neb. 545, 74 N. W. 55.

The complaint here merely discloses that certain citizens of Michigan City, their names and how numerous not being alleged, were justified in 7. employing appellees to audit the financial books of that city; that appellees did the work under such employment, and that under the facts they would be entitled to recover from their employers either the value of such services, or at the contract rate if there was a contract on that subject as insisted by such citizens, but denied by appellees, and that thereupon such citizens would be entitled to recover from the city their reasonable costs and expenses incurred. The complaint discloses no reason why appellees may not fully and expeditiously recover all that is due them by proceeding on the contract of employment. As we have said, the complaint is entirely silent on the subject of subrogation. It contains no

facts invoking that or other equitable doctrine, unless the facts above outlined are sufficient to that end, and we do not believe that they are. The action when measured by the complaint is merely at law for the recovery of a money judgment. The pleader apparently undertook to state a cause of action against the city and in favor of appellees by certain allegations, to the effect that the city through certain officials approved of the work being done by appellees, and directed them in doing it. It is not contended in this court that such allegations make the complaint good as stating a cause of action at law against the city, or that such allegations strengthen the complaint on the theory of subrogation.

In the original opinion we called attention to the fact that the members of the citizens' committee were not parties to the proceeding as indicating somewhat that subrogation is not the theory of the complaint. We should not, however, be understood as holding that under all circumstances the person to whose rights another seeks to be subrogated is a necessary party in a proceeding to that end. In 37 Cyc, at page 388, it is said that the right of subrogation, being equitable in its nature, cannot be enforced in proceedings to which those whose equities are affected are not parties, and in 20 Ency. Pl. and Pr., page 997, that as a general rule a court of equity will not make an order of subrogation without having before it all the parties that may be affected by the operation of such order. For illustrative and somewhat conflicting cases, see the following: *Bond* v. *Montgomery* (1892), 56 Ark. 563, 20 S. W. 525, 35 Am. St. 125; *Wilkins* v. *Gibson* (1901), 113 Ga. 31, 38 S. E. 374, 84 Am. St. 206; *Aultman* v. *Bishop, supra; Hill*

v. *Ritchie* (1916), 90 Vt. 318, 98 Atl. 497, L. R. A. 1917A 731; *Fridenburg* v. *Wilson* (1883), 20 Fla. 359, 367.

In each of the following there was an order of subrogation to a discharged claim, the former claimant not being a party to the proceeding: *Spaulding* v. *Harvey* (1891), 129 Ind. 106, 28 N. E. 323, 13 L. R. A. 619, 28 Am. St. 176; *White River School Tp.* v. *Dorrell* (1900), 26 Ind. App. 538, 59 N. E. 867; *Neptune* v. *Tyler* (1895), 15 Ind. App. 132, 41 N. E. 965.

As we have said, the members of the citizens' committee under the facts alleged have an inchoate right of action against the city to recover expenses incurred in prosecuting an investigation of the books. Their claim, while perhaps incomplete until they have actually paid costs and expenses, has not been discharged. Assuming that by proper pleading appellees, on account of having performed services alleged, may by subrogation proceed against the city, the effect of the recovery would be to discharge the claim of the members of the committee. Such would be the effect of an order of subrogation. Moreover, the record here discloses that there is controversy between appellees and the members of the committee respecting the amount that the latter agreed to pay the former for such auditing work, or whether there was any agreement fixing the amount. If the former may be subrogated to the rights of the latter against the city, in no event could there be a recovery beyond the contract price. A recovery then by appellees against the city would not only in effect discharge the claim of the committee members against the city, but also determine such controversy. Under such circumstances it is our

judgment that in the absence of some sufficient reason appearing, the members of the citizens' committee are necessary parties to such a proceeding.

Petition for rehearing overruled.

Note.—Reported in 116 N. E. 434, 119 N. E. 154.