TOWNSEND ET AL. *v.* THE CLEVELAND FIRE PROOFING COMPANY ET AL.

[No. 2,264. Filed Sept. 22, 1897. Rehearing denied Dec. 8, 1897.]

PLEADING.—*Complaint.—Exhibit.*—In an action on an account for goods and materials furnished, a bill of particulars must be filed with the complaint as an exhibit. *p. 571.*

MECHANIC'S LIEN.—*Property Held for Public Use.*—A mechanic's lien can neither be acquired nor enforced upon or against property held for public use. *pp. 571, 572.*

SAME.—*Property Held for Public Use.—Equitable Lien.*—Where a statutory lien cannot be acquired or enforced upon or against a public building there can be no equitable lien. *p. 572.*

SALE.—*Subrogation.—Material Furnished for Public Building.*—One who furnishes to a contractor material to be used in the construction of a public school building cannot be subrogated to the rights of the board of school commissioners and maintain an action on the bond given by such contractor to such board, conditioned that the contractor should faithfully perform the conditions of the contract, and indemnify said board against loss by reason of any liens, claims, or demands whatsoever for labor or material, where such contractor performed all of the conditions in his contract and bond with such board. *pp. 572–581.*

Townsend *et al. v.* The Cleveland Fire Proofing Company *et al.*

LIENS.—*Public Building.*—*Work and Labor.*—*Material.*—Where one furnishes material or performs labor for a contractor in the erection of a public building, where there is no contract to affect the status of the parties, the simple relation of debtor and creditor exists between the laborer or material man and the contractor, and the former can resort only to the remedies common to such creditor for the collection of their debts.   *p. 578.*

From the Marion Superior Court.   *Affirmed.*

*George W. Spahr*, for appellants.

*Roscoe O. Hawkins, Horace E. Smith* and *John T. Lecklider*, for appellees.

WILEY, C. J.—Appellants were plaintiffs below, and sued appellees for material alleged to have been sold and furnished to appellee, The Cleveland Fire Proofing Company, a subcontractor, in the construction of the Industrial School building, at Indianapolis, Indiana. The appellee, John C. Pierson, was awarded the contract for erecting said building by the board of school commissioners of said city. William L. Caldwell and Webster B. Slusser were alleged in the complaint to be partners, doing business under the firm name and style of The Cleveland Fire Proofing Company, and contracted with the appellee, John C. Pierson, for the fire proofing work in said building. Appellee, John C. Pierson, had a written contract with the board of school commissioners, and gave bond to said board, conditioned for the faithful performance of all the stipulations of his said contract. There was, also, a written contract between appellee, John C. Pierson, and Caldwell and Slusser, doing business as The Cleveland Fire Proofing Company, as subcontractors, and said Caldwell and Slusser gave to said Pierson a bond, conditioned for the faithful performance of all the stipulations of the contract on their part, and the appellee, the American Surety Company of New York became surety thereon. The other appel-

lees, Levi S. Pierson, David W. Pierson, Moses K. Fatout, and Roger R. Shiel, were sureties on the bond of John C. Pierson. Copies of each of said contracts and bonds are filed as exhibits to the complaint. In the language of the complaint, the plaintiffs aver that "they furnished and sold to said Cleveland Fire Proofing Company, at its special instance and request, and on the good faith and credit of the contracts, bonds, and obligations hereinbefore mentioned, and set out by copy, certain material to be used in the construction of said Industrial Training School building, to the amount of three thousand, six hundred and thirty-six dollars and five cents ($3,636.05); that there remains due and unpaid  *  *  *  *  the sum of two thousand dollars ($2,000.00),  *  *  *  and in so far as the defendant, The Cleveland Fire Proofing Company, is concerned, the same has been fully adjudged and determined. That the defendant, John C. Pierson, had full notice and knowledge of the fact that the plaintiffs were furnishing material which was being used and which had been used in said building, and that said defendant, John C. Pierson, notwithstanding said notice and the protests of the plaintiffs, and the demand of these plaintiffs of the said John C. Pierson for payment of their said claim,  *  *  *  *  paid to said Cleveland Fire Proofing Company large sums of money, which should have been applied to the payment of plaintiffs' claim."

The appellants further aver that the Cleveland Fire Proofing Company is a corporation, organized under the laws of the state of Illinois, with its principal office in the city of Cleveland, state of Ohio. This alleged corporation was not served with process, did not appear, and, so far as the record shows, no steps were taken against it. Neither does the record show that the appellees, Levi C. and David W. Pierson, Moses

K. Fatout, and Roger R. Shiel, were served with notice, and they did not appear, and no steps were taken against them. The American Surety Company and John C. Pierson each filed separate demurrers to the complaint, and based their cause of demurrer, first, that the complaint did not state facts sufficient to constitute a cause of action; and, second, that there was a defect of parties defendant, in that W. L. Caldwell and Webster B. Slusser should be joined as parties defendant. The court sustained these demurrers, and the appellants, electing to stand on the complaint, and declining to amend, judgment was pronounced against them for costs. The error assigned is the sustaining of the separate demurrers of the American Surety Company and John C. Pierson to the complaint.

It is somewhat difficult to understand the theory upon which appellants seek a recovery. If it is an action upon an account for goods and materials furnished, the complaint is bad for failure to file with it a bill of particulars as an exhibit. If, on the other hand, plaintiffs seek a recovery upon the several contracts and bonds filed as exhibits, it is difficult to tell whether they base their action upon one or all.

Taking the prayer of the complaint, we find the following: "Wherefore, plaintiffs say that each and all of the said contracts have been violated and broken, and because thereof said defendants are indebted to them," etc. We conclude, therefore, that the complaint proceeds upon the theory that there has been a breach of each and all of the contracts, and that on account of the breach, each and all of the defendants are liable. It is clearly the law that appellants have neither an equitable or statutory lien for the materials furnished by them to the Cleveland Fire Proofing Company, and which it is alleged were used in the construction of the building. It is the settled law in this

State that mechanic's liens can neither be acquired nor enforced upon or against property held for public uses. *Fatout* v. *Board, etc.,* 102 Ind. 223, and cases there cited. It seems to us that, as there can be no statutory lien, it necessarily follows that there can be no equitable lien, for it is the policy of the law that public buildings, used for public purposes,. cannot be burdened with liens the enforcement of which would divest the public of their rights in them.

Turning to appellants' brief, we find the following: "It would seem that a mere statement of the facts in this case would satisfy any one of the rights of the appellants to recover from Mr. Pierson and his bondsmen, and from the Cleveland Fire Proofing Company and its bondsmen—the right of appellants to be subrogated to the rights of the school board and of Mr. John C. Pierson." From this quotation .we must conclude that appellants are proceeding upon the theory that, under the facts stated in the complaint, they are entitled to be subrogated to the rights of the board of school commissioners and John C. Pierson under the several contracts mentioned. While there is no prayer in the complaint for subrogation, nor sufficient facts alleged to entitle appellants to subrogation, yet we feel at liberty to adopt the theory of the case that appellants have assumed and argued in their brief. Having invoked the doctrine of subrogation, and that being the theory upon which the appellants proceed, they must prevail upon that theory or not at all. It seems to us that the doctrine of subrogation is not in any sense applicable here, and a mere statement of that doctrine is amply sufficient to support the assertion. "Subrogation is the substitution of another person in the place of a creditor or claimant, to whose rights he succeeds in relation to the debt or claim asserted, which had been paid by him not voluntarily,

and contemplates some original privilege on the part of him to whose place substitution is claimed." 24 Am. and Eng. Ency. of Law, page 187.

Another and pointed definition we find in Anderson's Law Dictionary, page 984, as follows: "The substitution of a new for an old creditor; more generally, the act of putting, by transfer, a person in the place of another, or a thing in the place of another thing."

"When one has been compelled to pay a debt which ought to have been paid by another, he is entitled to a cession of all the remedies which the creditor possessed against that other." *McCormick* v. *Irwin*, 35 Pa. St. 117.

Mr. Sheldon, in his work on subrogation, thus defines it: "It is a substitution, ordinarily the substitution of another person in the place of one creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt. More broadly, it is the substitution of one person in the place of another, whether as a creditor or as the possessor of any other rightful claim. The substitute is put in all respects in the place of the party to whose rights he is subrogated." Sheldon on Subrogation, pp. 1, 2.

There seems to be no conflict in the authorities as to when and under what conditions the doctrine of subrogation is applicable, and who are entitled to invoke it. Briefly, it may be stated, that subrogation takes place as follows: (1) For the benefit of insurers; (2) for a surety who pays the debt of his principal; (3) for one co-surety against another co-surety to compel contribution; (4) for a purchaser who extinguishes an incumbrance on an estate purchased; (5) for a creditor who satisfies a lien for a prior creditor; (6) for an heir who pays the debt of the succession; (7) for one who has paid his own debt, which, for a valuable considera-

tion, was assumed by another but not paid. Sheldon on Subrogation, p. 4, section 3, and authorities there cited. See, also, 24 Am. and Eng. Ency. of Law, chapter on "Subrogation."

Mr. Sheldon further says: "There will be no subrogation unless the payment was made either under compulsion, or for the protection of some interest of the party making the payment, in discharge of an existing liability." Sheldon on Subrogation, p. 4, section 3.

We are unable to comprehend upon what principle or theory appellants are entitled to be subrogated to the rights of the board of school commissioners or John C. Pierson, under the contracts set out in their complaint.

In the case of *Opp* v. *Ward*, 125 Ind. 241, the Supreme Court, speaking by Mitchell, J., said: "The application of the doctrine of subrogation requires (1) that a person must have paid a debt due to a third person, for the payment of which another was in equity primarily liable; and (2) that in paying the debt the person paying acted under the compulsion of saving himself from loss, and not as a mere volunteer."

Mr. Justice Miller, in *Aetna Life Ins. Co.* v. *Middleport*, 124 U. S. 534, laid down the rule as follows: "The doctrine of subrogation in equity requires, 1, that a person seeking its benefit must have paid a debt due to a third party before he can be substituted to that party's rights; and, 2, that in doing this he must not act as a mere volunteer, but on compulsion, to save himself from loss by reason of a superior lien or claim on the part of the person to whom he pays the debt, as in cases of sureties, prior mortgagees," etc.

Applying these rules to the facts averred in the complaint, we are unable to see upon what theory or principle the doctrine of subrogation is applicable. In the contract between John C. Pierson and the board of

school commissioners, it was provided that such board had the right to apply any sum found to be due Pierson on an estimate, to the payment of laborers, mechanics, or material men to whom Pierson might be indebted on account of work done or material furnished, to the end that said board might be kept free from any pretense of claim on the part of such creditors.   The contract further provides that when the work was completed it was to be delivered to the board free and clear of all liens and incumbrances or claims of whatsoever character; and it was further provided that Pierson should execute a bond in favor of said board "for the faithful performance of this contract and indemnifying the said party of the first part from all loss, cost, or expenses for or by reason of any liens, claims or demands whatsoever, either for materials, or from laborers, mechanics, and others arising from accidents," etc.

In accordance with this provision, Pierson did execute his bond to the acceptance of said board, in the sum of $77,900.00.   The conditions of that bond were that Pierson was to furnish all the materials, and perform all the labor in the erection and completion of said building according to his contract.   Said bond contained this provision:  "Now, if said John C. Pierson shall well and faithfully perform all and singular the said contract  *  *  *  and protect and indemnify said board of school commissioners against all loss, cost, and damages caused by the failure of said John C. Pierson to perform his said contract, then this obligation to be void."'

Appellants did not charge or claim that they have any right of action against the board of school commissioners, but on the contrary, concede that they have none, by not making them parties defendant.   It is evident, so far as the complaint shows, that John

C. Pierson performed all his contract with the board, and turned over to them said building completed free from all liens, claims, and incumbrances. It follows, therefore, that so far as John C. Pierson and his bondsmen are concerned, the complaint does not state any cause of action.

Referring to the contract between John C. Pierson and Caldwell and Slusser, doing business under the name and style of the Cleveland Fire Proofing Company, and the bond accompanying said contract, we find similar provisions to those referred to in the contract between the board and said Pierson, and the bond executed under it. The materials furnished by said fire proofing company, and used in the construction of said building were, by the terms of the contract, to be free from any liens, claims, and incumbrances. The bond was conditioned that the said fire proofing company should keep and perform all and singular the stipulations, provisions, and covenants of said contract. There is no averment in the complaint that the contract between Pierson and the "fire proofing company," was not faithfully performed. In fact, it affirmatively appears from the allegations of the complaint that the materials furnished and labor performed by the said "fire proofing company," were freed from any liens, claims, and incumbrances of whatsoever kind.

To our mind, the case made by the complaint is this: Appellants sold and delivered to the Cleveland Fire Proofing Company materials to be used in the construction of the Industrial Training School building in Indianapolis. Their title in and claim to said materials were devested when they were delivered to the "fire proofing company," and they became its creditor to the amount of the price thereof. Though they aver in the complaint that they sold the goods on the faith

and conditions of the contracts and bonds referred to, yet this averment is meaningless and without force.

Appellants were bound to know the law, and, therefore, knew that they could not acquire or enforce a lien against the public school property for the materials furnished by them. They were bound to know, also, that they had no right of subrogation under the contracts and bonds set out in their complaint. The Cleveland Fire Proofing Company simply became their debtor on account of the goods sold and delivered to them, and their sole remedy under the facts stated was against such company. It follows, therefore, as a matter of law, that notwithstanding the allegations of their complaint they sold their goods and parted title with them solely on the faith and credit of the Cleveland Fire Proofing Company.

Subrogation is an equitable and not a legal right. Being the creature of equity, it will not be enforced where it will work an injustice to the rights of those having equal equities. 24 Am. and Eng. Ency. of Law, page 191.

Where one person deals with another and has it in his power to make his own terms so as to secure himself against loss, but fails to do so, he cannot then invoke the equity of subrogation.

In the case of *Gadsden* v. *Brown*, Speer Equity (S. C.), 41, Chancellor Johnson says: "The doctrine of subrogation is a pure unmixed equity, having its foundation in the very principles of natural justice, and from its very nature never could have been intended for the relief of those who were in a condition in which they were at liberty to elect whether they would or would not be bound, and as far as I have been enabled to learn its history, it never has been so applied.  *  *  *  It has been directed in its application exclusively to the

relief of those that were already bound, who could not but choose to abide the penalty. * * * I have seen no case; * * * in which a stranger, who was in a condition to make terms for himself, and demand any security he might require, has been protected by the principle."

In Arkansas it has been held that one who furnished material to a contractor to be used in the repair of a court house, on the promise of the contractor to pay, will not be subrogated to the contractor's rights in the fund provided by the county for the payment of the work, even though the contractor be insolvent. *Riggin* v. *Hilliard*, 56 Ark. 451, 20 S. W. 402. The case last cited is very similar to the one in hand. In his contract with the county, through the probate judge, Hilliard was to superintend the work, and gave his bond conditioned that upon its completion he was to deliver possession of the building free from any incumbrance or claim for labor and materials. Hilliard employed one Jones to do the carpenter work, and Riggin, under an agreement with Hilliard and upon his promise to pay him for the same, furnished some material used by Jones in the work. The complaint averred that Hilliard was insolvent. The prayer of the complaint was for a decree declaring a lien on the funds, etc. It was urged by counsel for Riggin that he should be subrogated to the rights of Hilliard. The court said: "The contention is that the appellant shows a right to equitable subrogation to the rights of Hilliard to proceed against the county for the collection of an amount equal to his claim against Hilliard. But the relation of the parties to each other is not such as to invoke the application of that doctrine."

The rule seems to be firmly settled, that where one furnishes material or performs labor for a contractor charged with the erection of a public building or other

public work, where there is no statute and no contract to affect the status of the parties, the simple relation of debtor and creditor exists between the material man, laborer, and contractor, and the former can resort only to the remedies common to such creditors for the collection of their debts. *Riggin* v. *Hilliard, supra,* and cases there cited.

*Kansas Sewer Pipe Co.* v. *Thompson,* 120 Mo. 218, 25 S. W. 522, is strongly in point. The city of Sedalia, Missouri, contracted with one Kamp to build a sewer, and took a bond from him for the faithful performance of the contract, which, among other things, provided that Kamp "would well and truly perform the covenants hereinbefore contained, to pay all laborers employed and for the materials furnished for said work." In that case, the supreme court of Missouri said: "It is very clear that the bond was one of indemnity alone, and was taken solely for the protection and benefit of the city, and the clause relied on to give plaintiff his action was meaningless and without consideration, either between Camp and the city or Camp and his bondsmen and plaintiff."

The case of *Breen* v. *Kelly,* 45 Minn. 352, 47 N. W. 1067, is also in harmony with the cases cited above. Hennepin county, in Minnesota, contracted for the erection of a public bridge, and took a bond from the contractor in which it was stated that it was "for the use of all persons who may do work or furnish materials pursuant to the contract." And it further stated, "shall save and secure the county of Hennepin harmless, and shall pay all just claims for work done and to be done, and all materials furnished and to be furnished, pursuant to said contract, and in the execution of the work therein provided for, as they shall become due hereafter." The action was brought by one who furnished materials and performed labor for the con-

tractor in the construction of the bridge, and it was held that he was not entitled to recover under the contract and bond, between the county and the contractor, on the ground that the county, unless expressly authorized by law, had no power to take a bond for security or benefit of third persons, and that such a bond, though voluntarily executed, is void.

The appellants contend that the facts alleged in the complaint clearly show a breach of the contracts, and bonds set out therein, and on account of such breach that they are entitled to recover under the conditions of the contracts and bonds, notwithstanding the fact they were not parties thereto. With this contention we cannot agree. So far as the facts appear from the complaint, the appellee, John C. Pierson, performed all the conditions and covenants of his contract with the board of school commissioners in that he completed the building according to its terms, and delivered it to said board freed from all claims, liens and incumbrances. And the same is true as to the conditions and covenants of the contract and bond between the appellee, John C. Pierson, and the Cleveland Fire Proofing Company.

Appellants cite and rely upon *Devol* v. *McIntosh*, 23 Ind. 529, but that case is radically different from the one at bar, and does not support appellant's contention.

*Huntington* v. *Fisher*, 27 Iowa 276, cited by appellants, was an action on a bond given for the primary security of one person, and contained a clause intended for the security of another person, and it was held that such other person might maintain an action upon it for a breach to his injury, though he was not named in it. The decision in that case, however, was bottomed upon a special statute, which provided that "when a bond or other instrument given to any person

is intended for the security of particular individuals, suit may be brought thereon in the name of any person intended to be thus secured, who has sustained any injury in consequence of a breach thereof."

In *Jordan* v. *Kavanaugh,* 63 Ia. 152, 18 N. W. 851, cited by appellants, the decision rests' solely on a special statute of that state.

We have no such statute in this State, and from the authorities cited, and from the above reasoning, there being no common law liability, it is clear that appellants have shown no cause of action against appellees, John C. Pierson and the American Surety Company.

From the conclusions we have reached, it makes it unnecessary for us to decide the question as to whether there is a defect of parties defendant, as raised by the demurrer.

Judgment affirmed.