TENNESSEE SUPPLY CO. *et al. v.* BINA YOUNG & SON *et al.**

(*Knoxville.* September Term, 1919.)

1. REFORMATION OF INSTRUMENTS. Schools and school districts.
   Reformation of contractor's bond properly refused in absence of
   showing of different agreement.

In an action by materialmen wherein it was sought to hold school
   commissioners individually liable for materials furnished a con-
   tractor in the construction of a school building, on the ground that
   the bond executed by the contractor was not drawn up so as to
   comply with Laws 1899, chapter 182, evidence *held* not to show
   that there was any agreement or any understanding between the
   commissioners and the contractor and surety to the effect that
   the bond was to cover labor and materials furnished as provided
   by such act, and a reformation was properly refused. (*Post,
   pp.* 148, 149.)

Acts cited and construed: Acts 1899, ch. 182.

2. SCHOOLS AND SCHOOL DISTRICTS. Contractor's bond did not
   comply with statute.

A bond executed by a contractor constructing a school building *held*
   not to comply with Laws 1899, chapter 182, an act protecting
   laborers and furnishers of material on public works. (*Post, pp.*
   149, 150.)

Case cited and approved: Hardison v. Yeaman, 115 Tenn., 648.

3. SCHOOLS AND SCHOOL DISTRICTS. Contractor's bond to furnish
   necessary material and labor did not inure to benefit of materialmen.

A bond given by a contractor on a school building, conditioned to
   provide all labor and material necessary for the construction of
   the building, did not inure to the benefit of those furnishing the
   contractor with labor or material. (*Post, pp.* 150, 151.)

———

*On right of sub-contractor, materialman or laborer to main-
tain action on bond taken for benefit of public, see note in 49 L. R. A.
(N. S.), 1175.

Tennessee Supply Co. v. Young & Son.

Cases cited and approved: Sterling v. Wolf, 163 Ill., 467; Searles v. Glora, 225 Ill., 167; Greenfield Lumber, etc., Co. v. Parker, 159 Ind., 571; Townsend v. Cleveland Fire Proofing Co., 18 Ind. App., 568; Green Bay Lumber Co. v. Independent School Dist., 121 Iowa, 663; Fellows v. Kreutz, 189 Mo. App., 547; Montgomery v. Rief, 15 Utah, 495; Puget Sound Brick Tile, etc., Co. v. School Dist. No. 73, 12 Wash., 118; Spalding Lumber Co. v. Brown, 171 Ill., 487; Beardsley v. Brown, 71 Ill. App., 199; Hunt v. King, 97 Iowa, 88; La Crosse Lumber Co. v. Schwartz, 163 Mo. App., 659; Montgomery v. Rief, 15 Utah, 495; Electric Appliance Co. v. U. S. Fidelity, etc., Co., 110 Wis., 434.

Case cited and distinguished: Cleveland Metal Roofing, etc., Co. v. Gaspard, Ann. Cas., 1916A. 759.

4. SCHOOLS AND SCHOOL DISTRICTS. No lien on school building for material furnished.

Furnishers of materials on a public school building in the course of construction by contractor have no lien on the property, and the school district is not liable to one who furnishes material to the contractor. (*Post, pp.* 151, 152.)

5. SCHOOLS AND SCHOOL DISTRICTS. Surety on contractor's bond not liable for voluntary payment of materialmen by owner.

A surety on the bond of a contractor constructing a school building was not liable to the school commissioners, who paid a creditor of the contractor when they were under no obligation to do so. (*Post, pp.* 152, 153.)

6. SCHOOLS AND SCHOOL DISTRICTS. Contractor and surety on school building liable for upkeep of buiding for one year and for defective workmanship and material.

A contract and bond for the construction of a school building *held* to render the contractor and surety liable for the upkeep of the building for a period of one year from and after its completion, as well as for any defective workmanship or material in its construction. (*Post, pp.* 153-155.)

7. SCHOOLS AND SCHOOL DISTRICTS. Finding by chancellor as to amount of damages caused by defective workmanship and material sustained.

In an action wherein school commissioners sought damages from a contractor and his surety due to defective workmanship and material used in the construction of a school building, a finding by the chancellor of damages in the sum of $4,171.92 *held* proper under the evidence. (*Post, pp.* 155-159.)

FROM MONROE.

Appeal from the Chancery Court of Monroe County. —Hon. T. L. Stewart, Chancellor.

D Sullins Stuart, for Tennessee Supply Co. and others.

Jourolmon & Welcker, for City of Jellico and Commissioners.

Maynard & Lee, for United Casualty & Surety Co. and Bina Young, Jr.

Mr. Justice McKinney delivered the opinion of the Court.

On February 18, 1914, the city of Jellico, through its school commissioners, entered into a written contract with the defendants Bina Young & Son for the erection of a school building in Jellico, according to the plans and specifications prepared by R. F. Graf & Sons, architects, which plans and specifications were made a part of the contract. Said contract provided that:

"The contractor shall and will provide all the materials and perform all the work for the general construction of the school building for Jellico, Tenn., as shown on the drawings and described in the specifications prepared by R. F. Graf & Sons, architects, which drawings

and specifications are identified by the signatures of the parties hereto, and become hereby a part of this contract.''

To guarantee the faithful performance of said contract said contractors executed the following bond, to wit:

## ''Contractor's Bond.

''Know all men by these presents: That we, Bina Young & Son, at Sweetwater, Tenn., as principals, and the United Casualty & Surety Company, as sureties, are held and firmly bound unto the city of Jellico, by its school board commission of Jellico, Tenn., in the sum and penalty of $9,000, to the payment of which we bind ourselves, our heirs, executors, and administrators, jointly and severally, firmly by these presents.

''The condition of this obligation is that Bina Young & Son, Sweetwater, Tenn., the above-bound principal obligors, have entered into a contract with the Jellico school board commission to construct and complete in all its parts, and furnish all the materials and labor therefor, certain structures for the said Jellico school board commission, on or before the 15th day of October, 1914, and to complete the same in accordance with the contract, plans, and specifications therefor, in a workmanlike manner, as therein provided, and to the acceptance of R. F. Graf & Sons, architects. Said contract, plans, and specifications, for the purpose of a full and complete understanding of their terms and conditions, are made a part of this undertaking, as fully as though copied herein, word for word.

10—142 Tenn.

"Now, therefore, if the above-bound Bina Young & Son, principal obligors, shall well and truly perform said contract and specifications, in the manner and within the time therein specified, and according to the letter and spirit thereof, then this obligation shall be void; but if said Bina Young & Son shall fail to perform said contract in all its parts, and according to the terms, tenor, and specifications thereof, and within the time limit therein fixed, and especially if they shall fail to pay and discharge any and all obligations on their part created and outstanding that may or shall constitute a lien upon said structures, or if they shall fail to maintain said structures if and when completed for a period of one year, as provided by the terms of the contract and specifications, or if they shall make default or fail in respect of the performance of any of the terms, conditions, or covenants in said contract and specifications, then this obligation shall remain in full force and effect.

"Witness our hands and seals, this 25th day of March, 1914. Bina Young & Son, by Bina Young, Jr. [Seal.] United Casualty & Surety Co., by C. J. Goodman, Sect'y & Treas. [Seal.]"

The school building was completed about March 4, 1915.

On March 10, 1915, the complainants, who furnished the materials used in the construction of said building, and for which they had not received payment, filed the bill in this cause, as a general creditors' bill, against said contractors, Bina Young & Son, the United Casualty & Surety Company, security on said bond and the

school commissioners, both in their official capacity and as individuals.

In said bill it was alleged that said contractors were insolvent; that the members of the school commission were individually liable because they did not take said bond in conformity with chapter 182 of the Acts of 1899, which provides that all officials taking bonds for public improvements shall be personally liable where they fail to take a bond conditioned to pay for all material and labor used in the contract; and said bill further charges that, in the event the court should be of the opinion that said school commissioners were not liable, they have a decree for their claims against said contractors and the surety on their bond.

All parties answered, denying liability.

The school commissions filed a cross-bill against said contractors and their surety, alleging that, in the event the court should be of the opinion that they were liable to the complainants, they then have a decree over against the contractors and their surety.

Later they filed a supplemental bill, in which they charged that the contractors had not erected said building according to contract, and asked that they be decreed damages on account of such breach.

They also charged in said cross-bill that it was the intention of the parties to have said bond drawn so as to comply with chapter 182 of the Acts of 1899, and prayed that said bond be reformed accordingly.

On the hearing the chancellor decreed that said bond was not drawn in compliance with chapter 182 of

the Acts of 1899; that the cross-complainants, under the facts, were not entitled to have said bond reformed so as to comply with said Act of 1899; that the complainants were entitled to a decree against the school commissioners and the contractors, Bina Young & Son, for the amount of their claims; that they were not entitled to a decree against the surety company on said bond, and dismissed their bill to that extent.

On the cross-bill the chancellor decreed that the contractors and their surety were liable for defective work and material used in the construction of said school building, and ordered a reference to the master to take proof and report as to the amount of the damages resulting from the breach of said contract.

The master reported damages to the amount of $605.99. Both parties filed exceptions to said report, and the matter was then heard by the chancellor, who decreed the damages to be $4,172.92.

Both parties appealed from the portion of the decree adverse to them, and have assigned errors.

In this brief statement of the pleadings several matters have been omitted, but the foregoing statement is full enough to present the questions raised by the several assignments of error.

We will first dispose of the assignments of error made by the school commissioners, the first of which is as follows:

"The court erred in refusing to decree a reformation of said bond so as to expressly show that said contractors were to pay the materialmen and furnishers

for the material used in construction of said building, and to have said bond so expressly provide.''

The evidence does not support this contention. Not a witness testifies as to any agreement or understanding, especially as to the surety company, to the effect that the bond was to cover labor or material furnished as provided by the Act of 1899.

A bond was executed by the contractors and delivered to Mr. Graft, the architect. This bond is not embodied in the transcript in this cause, and the record does not show the provisions and conditions thereof. However, Mr. Graf, acting for the school board, declined to accept said bond, but submitted a bond which had been prepared by his attorney, and which was executed by said contractors and their surety without any change or alteration. Mr. Graf testified that he had never heard of the Act of 1899, and hence he could not have had same in mind.

The surety company executed the bond prepared by the obligees, and without any agreement as to the terms and conditions to be contained therein further than appears by the bond itself, which was prepared by the agent of the obligees, and it would be unfair and unjust to the surety company to reform the bond so as to make it different from the one which the parties agreed upon.

The second assignment of error is as follows:

''The court erred in holding and decreeing that said bond is not in compliance with chapter 182 of the Act of 1899, and that therefore said surety company is not liable on said bond for the material and labor

that went into the Jellico school building, and in failing to grant appellants a decree against said surety company for the aggregate amount of the decree in this cause for materials furnished Bina Young & Son by materialmen, to wit, the sum of $3,980.77 and interest thereon and costs of the cause.

It has been held by this court that a bond of this character does not comply with chapter 182 of the Acts of 1899. *Hardison* v. *Yeaman,* 115 Tenn., 648, 91 S. W., 1111.

It is plausibly argued by learned counsel for the school commissioners, supported by numerous authorities, that, giving to the bond a liberal construction, it is sufficient to cover claims for material and labor for which the obligee is liable. Conceding this to be true, it does not necessarily follow that such a bond inures to the benefit of the furnishers of such material. The authorities appear to be to the contrary.

In a note to *Cleveland Metal Roofing, etc., Co.* v. *Gaspard,* Ann. Cas., 1916A, 759, the author says:

"A contractor's bond given to public authorities conditioned to furnish or provide all labor and material necessary for the construction of a public building does not inure to the benefit of those furnishing the contractor with labor or material; such a clause not being equivalent to a promise to pay for labor and material furnished. *Sterling* v. *Wolf,* 163 Ill., 467, 45 N. E., 218; *Searles* v. *Glora,* 225 Ill., 167, 80 N. E., 97; *Greenfield Lumber etc., Co.* v. *Parker,* 159 Ind., 571, 65 N. E., 747; *Townsend* v. *Cleveland Fire Proofing Co.,* 18 Ind. App., 568, 47 N. E., 707; *Green Bay*

*Lumber Co.* v. *Independent School Dist.*, 121 Iowa, 663, 97 N. W., 72; *Fellow* v. *Kreutz*, 189 Mo. App., 547, 176 S. W., 1080; *Montgomery* v. *Rief*, 15 Utah, 495, 50 Pac., 623; *Puget Sound Brick Tile, etc., Co.* v. *School Dist. No. 73*, 12 Wash., 118, 40 Pac., 608. The rule was stated in *Fellows* v. *Kreutz*, supra, as follows 'It is true that it is therein provided that he shall furnish the materials, and it would be fair to presume that that meant that he should furnish them at his own expense, but it could not be inferred from the fact that he was required to do this that he thereby bound himself to pay the persons from whom the materials should be obtained.' *

"Where the bond given by a contractor for the faithful performance of a contract for public work contains no provision for the payment of those furnishing labor and material, but is conditioned merely against liens and claims, the sureties thereon are not liable for unpaid labor and material bills. *Spalding Lumber Co.* v. *Brown*, 171 Ill., 487, 49 N. E., 725; *Beardsley* v. *Brown*, 71 Ill. App., 199; *Townsend* v. *Cleveland F. Proofing Co.*, 18 Ind. App., 568, 47 N. E., 707; *Hunt* v. *King*, 97 Iowa, 88, 66 N. W. 71; *Green Bay Lumber Co.* v. *Independent School Dist.*, 121 Iowa, 663, 97 N. W., 72; *La Crosse Lumber Co.* v. *Schwartz*, 163 Mo. App., 659, 147 S. W., 501; *Montgomery* v. *Rief*, 15 Utah, 495, 50 Pac., 623; *Electric Appliance Co.* v. *U. S. Fidelity, etc., Co.*, 110 Wis., 434, 85 N. W., 648, 53 L. R. A., 609."

In this State, in cases of public improvement there is no lien on the property for material furnished,

neither is there any liability on the part of the owner
to the party who furnishes such material to the con-
tractor. *Hardison* v. *Yeaman,* supra.

It is apparent in this case that the bond was executed
for the benefit of the owner, and not for the benefit
of the laborers and materialmen, and since complainants
are not parties to the bond, nor beneficiaries there-
under, they have no cause of action against the surety
on said bond, and the chancellor was correct in dis-
missing that part of their bill.

The third assignment of error is as follows:

"The court erred in adjudging that claimants were
entitled to a decree against these appellants H. K.
Tramell et al., school building commissioners, for
the amount of the said materials furnished as afore-
said, to wit, for the aggregate sum of $3,980.77."

This question was determined adversely to cross-
complainants by this court in *Hardison* v. *Yeaman,*
supra, and it is not necessary to discuss it further here.

The fourth assignment of error is as follows:

"The court erred in failing to render a decree in
favor of these appellants against Bina Young & Son
and said surety company for the sum of $75 and interest
thereon, paid by appellants to the Edwards Manufactur-
ing Company, a creditor of Bina Young & Son, for
materials furnished to said contractors by said manu-
facturing company for the aforesaid school building,
which payment was made after the settlement between
appellants and said Bina Young & Son for said building
on or about March 4, 1915, and for which said Bina
Young & Son and said surety company, as surety

for them, were liable to appellants. Said payment was and is not denied by said defendants, and was fully proven.''

This assignment must be overruled. Cross-complainants were not liable for said debt, and were under no obligation to pay the same, and in doing so they were mere volunteers. We find nothing in the bond fixing liability upon the surety company for such a claim.

The assignment of error made by the contractors and the surety company are as follows:

''(1) The court erred in holding and decreeing that defendants were liable in any amount to the cross-complainants for damages to said building for defective workmanship and material, or that defendants are liable to the cross-complainants and were required to replace or repair any work or materials which proved faulty or defective within a period of one year from the completion and acceptance of the work.

''(2) The court erred in adjudging that cross-complainants were entitled to a decree against these appellants Bina Young & Son and the United Casualty Company for the amount of the said sum of $4,171.92, as damages for the breaches of contract and the breach of the bond.

''(3) The court erred in sustaining the exceptions of the cross-complainants to the report of the master and in rendering judgment against these defendants for the sum of $4,171.92, instead of the sum of $605.99, which is the amount shown to be the correct amount of the damage to the building by the report of the master and the preponderance of the evidence.''

We will discuss these assignments together. The specifications contain the following provision:

"The contractor shall be required under the contract to give bond, to keep all of his work in repair, and replace any work or materials which shall prove faulty or defective at any time within a period of one year from the completion and acceptance of the work. Said work and materials to be replaced as soon as notified by the architect."

The bond contains the following provision:

"Or if they (Bina Young & Son) shall fail to maintain said structures if and when completed for a period of one year, as provided by the terms of the contract and specifications," etc.

Article 10 of the contract is as follows:

"It is further mutually agreed between the parties hereto that no certificate given or payment made under this contract, except the final certificate or final payment, shall be conclusive evidence of the performance of this contract, either wholly or in part, and that no payment shall be construed to be an acceptance of defective work or improper materials."

Without discussing this matter in detail, we concur with the chancellor in holding that the contractors, Bina Young & Son, and their surety are liable for the upkeep of said building for a period of one year from and after its completion, as well as for any defective workmanship or material used in its construction, and we do not find any facts in the record which would estop the cross-complainants from setting up such a claim. So that this branch of the suit is nar-

rowed down as to a question of fact as to the amount of damages suffered by the city of Jellico. From the evidence of witnesses for the defendantsc as well as from the evidence of the witnesses for the complainant, it is manifest that the said school building was not constructed according to contract, and that too much sand was used in making the concrete and plastering.

When it comes to determining the extent of this damage there is quite a divergence of opinion between the witnesses for the respective parties.

Witnesses for the complainants say the building is worth in the neighborhood of $4,000 less than it would be worth if it had been constructed according to the contract. On the other hand, witnesses for the defendants testify that the difference in value is only about $600.

This difference is due largely to the fact that witnesses for cross-complainants insist that the plastering and most of the concrete is rotten, and will have to be removed and the work done over, and that the construction of the partitions, etc., and of the doors will practically have to be done over in order to make a good job. On the other hand, witnesses for the defendants testify that the concrete and plastering can be patched, the doors stripped, etc.

The chancellor accepted the theory of the cross-complainants, and, after reading the evidence, we are not disposed to modify his holding.

Witnesses for cross-complainants were much more familiar with the work. They made a more thorough and detailed examination.

The three witnesses for defendants, contractors residing in Knoxville, spent an hour and a half or two hours examining this work, while the witnesses for the cross-complainants witnessed the preparation and application of the plastering by the contractors, and spent most of two days in examining the building with a view of determining the extent of the damage.

To illustrate, Mr. Baker, a contractor of long experience, examined this building with Mr. Africa, another contractor, and says that most of this concrete was rotten; that he took a hammer and knocked a hole in it and that it was hollow under the surface; that the bedding was no account. When asked what he meant by bedding he said:

"Well, you take and put in the concrete, put in the filler, up to about an inch of the top; that should be made of rock and sand, and that all cements and makes a body; then the top coat has to go on and make a finish on it; but this, as you broke through the top coat, it was hollow under there."

He testifies that two-thirds of this concrete would have to be taken up and the work done over, and when asked as to whether the third remaining was a good cement floor he said:

"Well, I didn't think any of it was good; our judgment none of it was good; but we thought that some of it would do. It did not have to be used as much as the rest."

He was asked this question:

"Could the 3,889 feet, which you say is in bad shape and rotten, be used at all, or would it have to be replaced?

"A. It would have to be replaced to get a good job out of it. It is just cracked and cross-cracked and broken."

And he testifies the same way as to the plastering.

Mr. Dunn, a prominent contractor of Knoxville, a witness for the defendants, after testifying that he found 1,788 feet of defective concrete work that would have to be removed, was asked this question:

"Q. In what condition is the remainder of the concrete floor, good or bad?

"A. All outward indications would show that the floors were all right; the remainder of the floors."

After testifying that 2,080 feet of the plastering would have to be removed and done over, he was asked this question:

"Q. How did you find the plaster generally where it had been plastered on the brick wall?

"A. From outward indications it was good."

We cite this testimony to show how guarded the witness was, and his method of testifying indicates that the examination made by himself and the other witness who was with him was of a superficial nature. Relative to the framing complained of, he was asked this question:

"Q. Did you find anything peculiar about the frame portions on the second and third floors?

"A. I found what was not exactly according to the general rule of framing around the well holes; however, in the absence of detail information, I don't know whether I would consider that defective or not."

And when asked about the doors, the other matter complained of, his answer was:

"The doors are made according to the plans, but whether or not these doors were put in a damp building and subjected to moisture or were made of green timber I could not say, but it appears that the doors are too short at the bottom and top, and it is certainly from one of these causes. Doors are made from kiln dried lumber generally, and the lumber in a building is open air dried. I have no way of knowing the cause of the defect in the doors."

It will be noted that the witness does not testify positively and knowing as the witnesses do who were examined for cross-complainants.

Mr. Graf, the architect, who the contract provided should be the final arbitrator as to labor and material used, testified that one year after the completion of the building he examined it, and that on account of defective workmanship and material the damage was practically what the chancellor found it to be.

All of the witnesses testify that too much sand was used.

Mr. Russell, who sold Young & Son the cement for the job, testifies that 176 sacks of the cement were returned.

Evidently the building was not constructed according to the contract.

If the cement and plaster is rotten, then patching will not remedy the evil, for, as testified by witnesses for cross-complainant, the old plastering will continue to fall off.

We have not undertaken to detail the evidence on these questions, but have simply referred to a few

matters to show what impression the evidence has made upon us. Had the contractors constructed this building as they agreed to do, these questions would not have arisen.

We are very well satisfied with the conclusions reached by the chancellor, and his decree will be in all things affirmed.

The cross-complainants will pay one-half of the costs of the appeal, and the defendants to the cross-bill will pay the other half.